[No. C033867. Third Dist. July 20, 2000.]

In re KELLY D. et al., Persons Coming Under the Juvenile Court Law.
SISKIYOU COUNTY HUMAN SERVICES DEPARTMENT, Plaintiff and
Respondent, v.
DARREN D., Defendant and Appellant.

**COUNSEL**

Janet A. Hilde for Defendant and Appellant.

Frank J. DeMarco, County Counsel, William P. Stanley, Assistant County Counsel, Donald R. Langford and Mary Frances McHugh, Deputy County Counsel, for Plaintiff and Respondent.

**OPINION**

**NICHOLSON, J.**—In this appeal we consider whether the juvenile court may deny the parent of a dependent minor a contested postpermanency

planning status review hearing. Appellant, Darren D., the father of the minors, contends he was entitled to such a hearing, which he sought in order to challenge a proposed modification in visitation. Based on the plain language of Welfare and Institutions Code section 366.3, subdivision (e), we agree with appellant's contention.[1] Accordingly, we reverse the order reducing appellant's visitation and remand to the juvenile court so that it may conduct a contested hearing.

## BACKGROUND

On January 14, 1997, the Siskiyou County Human Services Department (HSD) filed a section 300 petition on behalf of nine-year-old Kelly, eight-year-old Shane, and seven-year-old Marcus. That petition alleged generally the minors were living with their mother in an uninhabitable dwelling. The petition also averred that appellant was "unwilling and unable" to care for the minors.

The juvenile court sustained the petition, adjudged the minors dependent children, and ordered the minors placed in appellant's custody under the supervision of the court with family maintenance services provided by HSD. Thereafter, on September 10, 1998, HSD filed a supplemental petition on behalf of the minors, pursuant to section 387. That petition alleged appellant had physically abused a stepbrother of the minors, the minors' home was unsafe, and appellant had used methamphetamine.

HSD detained the minors and sought to place them in foster care. The juvenile court sustained the supplemental petition as amended and ordered them placed in foster care. On November 9, 1998, the court ruled the permanent plan for the minors was long-term foster care.

The record does not disclose the existence of any visitation order. However, HSD permitted appellant to visit with the minors on a regular basis. He had weekly supervised visits, which the social worker described as "generally positive."

In her September 1999 report, the social worker noted appellant was having difficulties handling the minors during their visits, requiring frequent intervention by the social worker. The social worker also reported that appellant discussed inappropriate matters with the minors. Moreover, there were reports of negative behavior by the minors before and after visits. The social worker concluded "[i]t is anticipated that their visits with [appellant]

---

[1]Further statutory references to sections of an undesignated code are to the Welfare and Institutions Code.

will more than likely become reduced . . . if there is no significant change in their behavior around the visits." However, the social worker's report contained no recommended change in the frequency of the minors' visitation with appellant.

At the September 20, 1999, status review hearing, counsel for HSD proposed a reduction in the frequency of visitation between appellant and the minors from weekly to monthly. Counsel for the minors agreed with that suggestion. Opposing the proposed reduction in visitation, counsel for appellant asked for a contested hearing on the issue. Appellant's counsel also argued that, because the social worker's report did not request a change in the frequency of visitation, appellant had no notice of the proposed reduction. Counsel also suggested HSD was required to show appellant's weekly visits were detrimental to the minors to justify the proposed reduction.

Acknowledging the record contained no visitation order, the juvenile court noted appellant had been visiting the minors on a weekly basis. The court then ruled as follows: "It is my opinion that there is no right to a contested hearing on this issue. Visitation would still be in the discretion of the Department. I feel that the Department can reduce the visits—unless it's patently unreasonable, can reduce the visits in accordance with the reports that they have submitted to the Court. [¶] And the court is going to approve the reduction of visits to once per month." (Unnecessary capitalization omitted.) The court then stated its specific order was for reasonable visitation within the discretion of HSD.

In support of its ruling, the juvenile court cited reports filed in the case and the fact the proceedings were in the postreunification, postpermanency planning phase. The court also noted the main emphasis at this stage of the proceedings was on promoting the best interests of the minors. Counsel for appellant expressed concern about the court's reliance on the social worker's report "without allowing the cross examination of the witnesses . . . ."

The juvenile court ordered all other orders in the proceeding to continue. The court also scheduled another status review hearing. This appeal followed.

## DISCUSSION

## I

Relying on the express terms of section 366.3 and principles of procedural due process, appellant contends he was entitled to notice and a

contested status review hearing. According to appellant, HSD failed to provide prior notice of its intention at the hearing to seek a reduction in visitation. Appellant agues that, "[a]t the hearing, appellant would be able to present evidence to show that visitations were beneficial to the children, not detrimental. The court would then be able to make an informed decision on whether it should reduce appellant's visitation."

The rejoinder of HSD is that whether a party is entitled to a contested status review hearing depends on a balancing of the various factors involved. In support of that assertion, HSD relies in part on our recent opinion in *Ingrid E. v. Superior Court* (1999) 75 Cal.App.4th 751 [89 Cal.Rptr.2d 407] (*Ingrid E.*). HSD also argues that the issue of visits pertains more to the minors' interests than to the interests of the parents. To bolster its argument, HSD notes the absence of explicit language in subdivision (e) of section 366.3 addressing the issue of visitation. In sum, according to HSD, under the circumstances presented, "a balancing of the Appellant's rights and interests against the Juvenile Court's [duty] to conduct a prompt and efficient status review hearing clearly shows that the Juvenile Court's decision to deny a contested hearing was correct."[2]

In determining the proper scope of section 366.3, our primary task is to determine legislative intent. In order to do so, we must begin with the wording of the statute itself. (*Brown v. Kelly Broadcasting Co.* (1989) 48 Cal.3d 711, 724 [257 Cal.Rptr. 708, 771 P.2d 406].) Where the language of the statute is clear, there is no need to resort to other indicia of legislative intent; no need for construction then exists. (*Lungren v. Deukmejian* (1988) 45 Cal.3d 727, 735 [248 Cal.Rptr. 115, 755 P.2d 299]; *Solberg v. Superior Court* (1977) 19 Cal.3d 182, 198 [137 Cal.Rptr. 460, 561 P.2d 1148].) Moreover, every word, phrase and provision employed in a statute is intended to have meaning and to perform a useful function.[3] (*Clements v. T. R. Bechtel Co.* (1954) 43 Cal.2d 227, 233 [273 P.2d 5].)

---

[2]We presume, as did the juvenile court, that despite the absence from the record of any visitation order entered previously by the court, HSD had arranged for weekly visits between the minors and appellant as though such an order *were* in effect.

[3]Section 366.3 provides in part as follows: "(d) If the child is in a placement other than the home of a legal guardian and jurisdiction has not been dismissed, the status of the child shall be reviewed at least every six months. . . . The review of the status of a child for whom the court has not ordered parental rights terminated and who has not been ordered placed for adoption may be conducted by the court or an appropriate local agency. . . . [¶] . . . [¶] The court shall determine whether or not reasonable efforts to make and finalize a permanent placement for the child have been made. [¶] (e) Except as provided in subdivision (f), at the review held every six months pursuant to subdivision (d), the reviewing body shall inquire about the progress being made to provide a permanent home for the child, shall consider the safety of the child, and shall determine all of the following: [¶] (1) The continuing necessity for and appropriateness of the placement. [¶] (2) The continuing appropriateness and extent of

■   As appellant has argued, subdivision (e) of section 366.3 expressly entitles the parents of a minor in long-term foster care to notice of and participation in the six-month status review hearing. "Notice" of that hearing must include notice to the parent of any proposed departmental modifications to existing juvenile court orders. Moreover, to "participate" in the hearing connotes involvement as a party to the proceeding, one essential aspect of which is the reasonable expectation that parents could challenge departmental proposals and proposed court modifications.

We disagree with the suggestion by HSD that, because section 366.3 does not mention visitation, visits are a service pertaining only to the minor. First, although visits are not addressed explicitly in the statute, from other language in subdivision (e) one must infer that visitation is a proper issue to address at the hearing, and that it pertains to parental interests as well as those of the minor. For example, under the express terms of the statute, the juvenile court must review the adequacy of services provided to the minor, consider the minor's safety, *and* assess the progress the *parents* have made toward mitigating the causes necessitating placement in foster care. (§ 366.3, subd. (e).)

It is true that, by the time the juvenile court conducts a status review hearing, the minor is in a placement other than with the parents. However, that situation is not necessarily a permanent one. As subdivision (e) provides, a parent has the opportunity to demonstrate that additional efforts at reunification will promote the best interests of the minor. In such a case, the court may order further reunification services for the parent. (§ 366.3, subd. (e).) Thus, it is possible that parent and child could be reunited.

---

compliance with the permanent plan for the child. [¶] (3) The extent of the agency's *compliance with the child welfare services case plan in making reasonable efforts to return the child to a safe home and to complete whatever steps are necessary to finalize the* permanent placement of the child. [¶] (4) The adequacy of services provided to the child. [¶] (5) The extent of progress the parents have made toward alleviating or mitigating the causes necessitating placement in foster care. [¶] (6) The likely date by which the child may be returned to and safely maintained in the home, placed for adoption, legal guardianship, or in another planned permanent living arrangement. [¶] . . . [¶] The reviewing body shall determine whether or not reasonable efforts to make and finalize a permanent placement for the child have been made. [¶] Each licensed foster family agency shall submit reports for each child in its care, custody, and control to the court concerning the continuing appropriateness and extent of compliance with the child's permanent plan, the extent of compliance with the case plan, and the type and adequacy of services provided to the child. [¶] Unless their parental rights have been permanently terminated, *the parent or parents of the child are entitled to receive notice of, and participate in, those hearings.* It shall be presumed that continued care is in the best interests of the child, unless the parent or parents prove, by a preponderance of the evidence, that further efforts at reunification are the best alternative for *the child. In those cases, the court may order further reunification services to return the child* to a safe home environment be provided to the parent or parents for a period not to exceed six months." (Italics added.)

In *Ingrid E., supra,* 75 Cal.App.4th 751, 754, 755, 756, the juvenile court denied the mother a contested 18-month review hearing, even after she had submitted a statement in support of her request. This court held that the juvenile court abused its discretion and denied the mother due process in denying her request for a contested hearing. (*Id.* at p. 759.) In so holding, we acknowledged the interest of the juvenile court in exercising broad control over dependency proceedings, and in the balancing of that interest against the interest of a parent. (*Id.* at pp. 758, 759.) We also noted the absence of statutory authority governing the rights of parents at reunification review hearings. (*Id.* at p. 758.)

In this case, unlike in *Ingrid E., supra,* 75 Cal.App.4th 751, there *is* statutory authority governing the rights of the parents in the proceeding at issue, which was a six-month postreunification status review hearing. As to that hearing, the Legislature has made its intention clear. As we have seen, subdivision (e) of section 366.3 confers on a parent the right to "participate" in the hearing, a right which, we have suggested, has little meaning or content if it does not include the right to challenge or contest a proposed order.[4]

HSD cites *Maricela C. v. Superior Court* (1998) 66 Cal.App.4th 1138 [78 Cal.Rptr.2d 488]. There, the court held the juvenile court was not obliged to grant the mother's request for a contested review hearing pursuant to the version then in effect of subdivision (f) of section 366.3. (66 Cal.App.4th at p. 1141.) The minors had been placed in foster care, but the juvenile court also had scheduled a section 366.26 hearing. (66 Cal.App.4th at p. 1142.) Moreover, the court had no occasion to construe language similar to the language found in subdivision (e). (66 Cal.App.4th at p. 1143.) Thus, *Maricela C.* does not pertain to this case.

## II

Review hearings are a critical aspect of our state's dependency system. We recognize the expeditious resolution of these proceedings is an essential goal of that system. But the Legislature has decided that accommodating the wishes of, and, indeed, rights of parents to attempt to reestablish the parents' relationship with a child is a vital objective as well.

In this case, appellant sought a contested hearing on the issue of the frequency of his visitation with the minors. We conclude that, pursuant to

---

[4]In a recent opinion, this court went beyond *Ingrid E., supra,* 75 Cal.App.4th 751, and concluded the juvenile court may not deny a party the right to a contested review hearing, even if no offer of proof was tendered. (*In re James Q.* (2000) 81 Cal.App.4th 255 [96 Cal.Rptr.2d 595].)

the express language of subdivision (e) of section 366.3, he is entitled to that hearing. The juvenile court's failure to comply with appellant's request resulted in a miscarriage of justice under the circumstances here. (Cal. Const., art. VI, § 13.)

On remand, the court must conduct another review hearing, pursuant to section 366.3, and consistent with the principles expressed in this opinion. If HSD seeks a modification of visitation or any other proposed change, it must provide notice to appellant a reasonable time in advance of the rescheduled hearing. At the hearing, appellant has the right to testify and otherwise submit evidence, cross-examine adverse witnesses, and argue his case.

### III

In light of our disposition, we need not consider appellant's remaining contention, which is directed at the sufficiency of the evidence to support the order reducing the frequency of his visitation.

### DISPOSITION

The order reducing the frequency of appellant's visitation with the minors is reversed, and the matter is remanded to the juvenile court, which shall conduct a contested hearing on the proposal by HSD to modify appellant's visitation.

Davis, Acting P. J., and Kolkey, J., concurred.