119 Cal.Rptr.2d 631 (2002)
98 Cal.App.4th 328
In re JOSIAH S., a Person Coming Under the Juvenile Court Law.
Los Angeles County Department of Children and Family Services, Plaintiff and Respondent,
v.
Diana S., Defendant and Appellant.
No. B151283.
Court of Appeal, Second District, Division Four.
May 9, 2002.
Rehearing Granted May 22, 2002.
*633 Lisa M. Bassis, under appointment by the Court of Appeal, for Defendant and Appellant.
Lloyd W. Pellman, County Counsel, and Jacklyn K. Louie, Deputy County Counsel, for Plaintiff and Respondent.
*632 HASTINGS, J.
The juvenile court denied a request by appellant, Diana S., to contest continued long-term placement of her son, Josiah S., at a six-month status review hearing conducted pursuant to Welfare and Institutions Code section 366.3, subdivision (e).[1] Shortly afterward, it summarily denied her section 388 petition which proffered similar issues. Section 366.3, subdivision (e), provides that a parent whose parental rights have not been terminated has the right to contest the issue of continued care. It follows that the juvenile court erred in denying appellant's request for a contested hearing. We reverse the order denying a contested hearing and remand with directions that the juvenile court provide appellant the contested hearing she sought. Because appellant's section 388 petition addressed similar issues, we conclude the order summarily denying that petition should also be set aside.

FACTS
This is the fourth time we revisit this difficult case to address the merits of orders made by the juvenile court. To aid in understanding of this matter, we review the four prior matters.
In the first appeal, we discussed the background giving rise to this case. Josiah S., born November 1997, was diagnosed as having a number of medical problems: scoliosis, a systolic heart murmur, an atrial septal defect, an inguinal hernia and probable gastroesophagal reflux. He suffered *634 from several pulmonary problems, including chronic lung disease. Hospitalized since birth, Josiah was discharged to the care of appellant at age two months and five days, weighing about nine pounds and on oxygen.
In March 1998, the Department of Children and Family Services (DCFS) was contacted, and it was reported that appellant refused to allow home health care nurses into her home to assess and monitor three-month-old Josiah.
On June 19, 1998, Josiah was admitted to Northridge Hospital for non-organic failure to thrive, dehydration and vomiting. When Dr. Willa Olsen, Josiah's primary care physician, told appellant that Josiah was suffering from dehydration, appellant confirmed that Josiah had not received fluids for over 12 hours. The dehydration was intensified by the fact that appellant gave Josiah a prescribed diuretic the morning of the hospitalization. Appellant's behavior throughout Josiah's hospitalization was described as "bizarre, manic, hyperverbal." When appellant fed Josiah during this hospitalization, he frequently gagged and cried. But when hospital staff fed Josiah, it was reported that he fed well. On more than one occasion, appellant attempted to stop, frustrate or intervene during hospital staff feedings of Josiah.
DCFS filed a petition pursuant to section 300, subdivisions (b), (c), (e), (g) and (i). It was alleged that appellant failed to obtain critical medical treatment for her son, failed to schedule cardiology appointments, failed to cooperate with home nurse visits, and demonstrated many emotional problems limiting her ability to care for Josiah. On June 29, 1998, Josiah was ordered placed in shelter care upon his release from the hospital. Appellant was to have monitored visits at least once a week and was allowed to contact the caretakers to inquire about Josiah's medical needs not more than once a week. Josiah was released to foster mother Grete V., a registered pediatric nurse.
On November 3, 1998, the juvenile court sustained the allegations of the petition. It orally made a finding that appellant's bizarre behaviors prevented her from caring for or understanding and cooperating with Josiah's medical needs, which resulted in willful cruelty being inflicted on Josiah. It concluded that "if it hadn't been for the intervention of other parties, this minor probably would not be with us today." The court ordered appellant to undergo a psychological evaluation pursuant to Evidence Code section 730 before addressing dispositional issues.
The psychiatric evaluation was done by Ronald Fairbanks, Ph.D. He reported that appellant was slow to respond to significant questions and answered them in a calculated manner. He concluded that appellant blamed everyone but herself for Josiah's problems and that her psychological composition, "that is, compulsive histrionic and narcissistic ... suggest that she is so self-centered that she may have a difficult time being a giving parent." He recommended frequent monitored visits of less than four hours and would only recommend reunification if appellant would accept counseling and begin to accept responsibility for some of Josiah's problems.
On March 2, 1999, appellant moved to reopen her case for the purpose of submitting a letter dated February 19, 1999, written by Marvin Ament, M.D., a professor of pediatrics and Chief of the Division of Gastroenterology and Nutrition at the UCLA School of Medicine. The court granted appellant's motion to reopen her case but denied her request to accept the letter into evidence. The court concluded that information in the letter was irrelevant at the dispositional phase of the case, *635 was untimely, and the letter lacked foundation. It then issued its dispositional order finding that Josiah was a dependent of the court. It ordered that Josiah's custody be removed from appellant, reunification services be provided to appellant, and that appellant attend a parent education program and receive individual counseling. It also ordered that necessary medical treatment be afforded to Josiah and that appellant could participate in the medical appointments. It granted appellant one four-hour visit with Josiah each weekend as long as the visit did not conflict with his medical appointments.
In our unpublished opinion of August 2, 2000, No. B131637, we affirmed the jurisdictional and dispositional orders of the trial court.
On April 12, 1999, the attorney representing Josiah S. sought a "walk-on" ex parte restraining order against appellant. The application was supported by a letter signed by the minor's foster parent, Greta V. She complained that on various occasions appellant and appellant's parents were hostile and vindictive toward her, that appellant made false accusations about her to the police and others, and that appellant trespassed on her property and took unauthorized photographs. Appellant appeared, without counsel, and objected to the application on the ground she was not given proper notice and that the application was supported only by hearsay information. The juvenile court granted the application and entered restraining orders valid for one year against appellant and appellant's parents. It set an order to show cause for hearing on June 14, 1999. Except for the original letter written by Greta V., no further evidence was submitted to support the application. On June 14, at appellant's request, the matter was continued to June 29, 1999. On this latter date, the court affirmed the original restraining orders over appellant's objection and issued additional restraining orders. These orders were the subject of the second appeal, No. B134678.
We reversed the restraining orders finding that the application was void because it was supported only by a "conclusory, argumentative, handwritten letter, not signed under oath, and containing few evidentiary facts."
We next addressed this case in unpublished Opinion No. B136387, filed May 2, 2001, where we affirmed the order of the juvenile court terminating reunification services and ordering long-term foster care for Josiah S.
The fourth appeal was in Case No. B143060 seeking review of orders made by the juvenile court on May 26, 2000. The issue addressed on appeal was violation of appellant's due process rights: she had been expelled from the courtroom at the beginning of the hearing. We quote from a portion of our unpublished opinion for further background:
"The hearing at issue was scheduled to address three matters: (1) review of the permanent plan previously adopted; (2) extension of an order restraining appellant from interfering with the caretakers of Josiah; and (3) appellant's counsel's motion to be relieved as counsel for appellant. We quote verbatim from the first two and one-half pages of the reporter's transcript to set up our discussion:
`THE COURT: Number 3, [the case of] [S].
`Counsel, please state your appearance.
`MR. HARRIS: Randall Harris on behalf of the Department.
`MS. NEALSON: Molly Nealson, DCLS 3, standing in for Mercedes Lee-Akounou on behalf of the minor, Josiah.

*636 `THE COURT: Thank you.
`MS. CUSHING: Ann Bryce Cushing for the mother. She's coming into court.
`THE COURT: Thank you.
`This is here for review of the permanent plan.
`THE MOTHER: I'm sorry. Could you wait until I sit down, please.
`THE COURT: This is here for review permanent plan.
`For the record, this court has read and considered the report. The recommendation is to continue long-term foster care.
`Counsel wish to be heard?
`MS. CUSHING: Your Honor, on behalf
`THE MOTHER: I would like to speak.
`THE COURT: Excuse me. Sit down.
`MS. CUSHING:on behalf of my client, II do not know what her recommendation is. She and I have reached an impasse. Normally, I would be submitting on the recommendation, as there's no change in the placement and there's no change in the visitation, but I have not received any other instructions from my client, and Iand I know that she would like to be heard.
`I'veI've written her and explained to her that we're only going to do three things today, review of the permanent plan, temporary restraining order and a motion to be relieved.
`THE COURT: All Right.
`Ms. Nealson?
`MS. NEALSON: Yes, Your Honor.
`THE MOTHER: I would like to be heard.
`THE COURT: Excuse me.
`Ms. Nealson?
`MS. NEALSON: Yes, Your Honor.
`THE MOTHER: Your Honor
`THE COURT: Ma'am, I run these proceedings. And you will be quiet until youuntil you're talked to.
`THE MOTHER: Your Honor
`THE COURT: Would you, please, have her leave the court right now.
`(The bailiff complies and starts to escort the mother out of the courtroom.)
`THE COURT: Ms. Nealson?
`THE MOTHER: Your Honor, as to the issue
`THE MOTHER: I object for the record, sir. I have a right to speak.
`THE COURT: You're being disruptive of this court, and you're out of here.
`THE MOTHER: When
`THE COURT: Get out of this courtroom now.
`THE MOTHER: My attorney is not to speak for me.
`Please make sure that's on the record.
`MS. CUSHING: It's on the record, Ms. [S]. Thank you.
`THE COURT: Get out of this courtroom.
`THE MOTHER: I have a right to speak. This is slander. And I have a right to address the court.
`(The mother exited the courtroom.)'
"The proceedings then went forward without any participation by appellant. At no time did the presiding officer return appellant to the courtroom to address the court, as she had requested.
"After appellant's ejection, the court first addressed the long-term plan and ordered that it be continued with all previous orders in full force and effect. It then granted the request to extend the restraining order. Finally, the court denied counsel's request to be relieved as appellant's counsel. In doing so, the *637 court identified one of the `obvious problems' with the request was that it would allow appellant `to proceed in pro per.' It noted: `based upon outbursts in this court and the outburst today in this court by the mother, it would be impossible for this court to proceed in that manner. It simply would not be appropriate under the circumstances because you just won't be able to get the business of this case done with her representing herself.'" (Opinion No. B143060, pp. 3-6.)
We reversed the orders of the juvenile court. Because we face a similar issue in this appeal, we quote from our discussion in that opinion:
"The result in this case is dictated by appellant's ejection from the courtroom, after which she was given no right to address the court.
"In re Kerry O. (1989) 210 Cal.App.3d 326, 331, 333-334, 258 Cal.Rptr. 448, confirmed that a parent in a dependency proceeding not only has a federal due process right under the Fifth and Fourteenth Amendments to confront and cross-examine witnesses, but that right is conferred by statute in dependency hearings. (See also §§ 311, subd. (b); 341, 353; Cal. Rules of Court, rule 1449(b)(3) and (4); In re Malinda S. (1990) 51 Cal.3d 368, 383, fn. 16, 272 Cal.Rptr. 787, 795 P.2d 1244, superseded by statute on another point according to In re Lucero L. (2000) 22 Cal.4th 1227, 1240, 96 Cal.Rptr.2d 56, 998 P.2d 1019; see also In re Kristin H. (1996) 46 Cal. App.4th 1635, 1664-1667, 54 Cal.Rptr.2d 722; In re Corey A. (1991) 227 Cal. App.3d 339, 346, 277 Cal.Rptr. 782; In re Mary S. (1986) 186 Cal.App.3d 414, 418-419, 230 Cal.Rptr. 726, questioned on another point in In re Kristin H., supra, 46 Cal.App.4th at pp. 1664, 1667, 54 Cal.Rptr.2d 722.) Those rights, to be meaningful, entail adequate notice and an opportunity to be heard. `The fundamental and crucial right to "conceive and raise one's children" is protected by due process guaranties. [Citations.] "[T]he interest of a parent in the companionship, care, custody, and management of [her] children is a compelling one, ranked among the most basic of civil rights [citations], [and] the state, before depriving a parent of this interest, must afford [her] adequate notice and an opportunity to be heard." [Citation.]' (In re Brendan P. (1986) 184 Cal.App.3d 910, 915, 230 Cal.Rptr. 720, criticized on another point in In re Travis C. (1991) 233 Cal.App.3d 492, 500-502, 284 Cal.Rptr. 469; see also In re Desiree B. (1992) 8 Cal.App.4th 286, 291, 10 Cal.Rptr.2d 254.)
"Presiding judicial officers have great power to enforce order in their presence and to provide for the orderly conduct of proceedings. (Code Civ. Proc., § 128, subd. (a).) But that power is not absolute. It is subject to review for abuse of discretion. (People v. Miller (1960) 185 Cal.App.2d 59, 8 Cal.Rptr. 91, cert, den., appeal dismissed, 365 U.S. 568, 81 S.Ct. 755, 5 L.Ed.2d 807.)
"We understand and can sympathize with the trial court regarding the fact that appellant can be difficult at times. But the record does not demonstrate that appellant's conduct at this hearing was improper. She merely wanted to address the court herself. This is especially significant in light of the fact that appellant's counsel had moved to be relieved and had not been able to have a meaningful conversation with appellant to understand appellant's position on each of the issues then before the court. Excluding appellant from the courtroom left her without any effective advocate in the courtroom." (Opinion, B143060, pp. 7-8.)
*638 The current appeal focuses on a status review hearing originally set for April 25, 2001, and ultimately conducted on May 25, 2001, as well as denial of appellant's section 388 petition. We review the facts concerning these matters.
DCFS filed a status review report for the hearing scheduled for April 25, 2001. It reflected that Josiah had been removed from his prior placement and had been placed in a new foster home because of what was termed appellant's "continued inappropriate behavior." The prior foster mother informed the social worker that she would have liked to adopt Josiah, but that she feared for her safety if she were to do so. It noted that Josiah had "thrived" since placement with the new foster parents. The report also stated that Josiah's placement into a special education program had been delayed approximately three months because of reported difficulties involving lack of appellant's cooperation in the process. Because of these problems, on April 9, 2001, the court had ordered appellant's educational rights with regard to Josiah be limited and that the school district appoint an educational surrogate on behalf of Josiah. Included with this report was one from Nurse Vicki Carrera discussing Josiah's medical condition and treatment.
On April 25, the juvenile court continued the matter to May 25 for a contested hearing.
DCFS filed a motion, which was set for hearing on May 25, seeking to limit appellant's parental involvement in Josiah's education and educational planning. The motion was supported by a declaration of school psychologist Darlene W. listing problems she had in attempting to deal with appellant.
On May 25, appellant told the court that she had not received the report prepared by DCFS for the April 25 hearing. She was concerned that she may have lost the opportunity to bring in new evidence or file a section 388 petition. Appellant's trial attorney objected to the "findings" in the April 25 report and requested that appellant be allowed an evidentiary hearing. The juvenile court denied the request, telling appellant it intended only to continue the plan of long-term foster care. It further stated: "[I]f there's a change and your parental rights were proposed to be terminated, you would have the opportunity to present your evidence at that hearing." The juvenile court ordered that long-term foster care remain as the permanent plan and continued the motion filed by DCFS to June 28, 2001. Appellant apparently received a copy of the April 25 report at this hearing.
On May 30, appellant filed a section 388 petition seeking modification of the juvenile court's jurisdiction and disposition orders, and requesting the return of Josiah to her custody. She also asked the court to make an order allowing her to have her own medical expert examine Josiah and to review all medical records from foster care. She argued that the report of Nurse Carrera, referenced in the April 25 DCFS report, established that Josiah was continuing to have problems similar to when he was in appellant's custody. She argued this was new evidence which supported her position that it was not her care, or lack thereof, which threatened Josiah. As additional support, she relied upon the letter from Dr. Ament she had previously proffered to the court. She stated that Dr. Ament had concluded that Josiah's failure to thrive was caused by his "Chronic Lung Disease" and the minor's heart condition. She acknowledged that her prior proffer of this evidence was rejected at the dispositional hearing as untimely, but maintained it was "still the truth" and that rejection of Dr. Ament's report was caused by her *639 then-attorney's ineffective assistance. She asserted that other medical experts backed up Dr. Ament's evaluation of Josiah's failure to thrive as organic in nature. She also claimed that Josiah had suffered detriment while in the protective custody of DCFS and that Josiah's best interests would be served by his return to her custody.
On May 31, 2001, without giving any factual reason for its decision, the court summarily denied appellant's section 388 petition.
Appellant filed a notice of appeal on June 25, 2001.
Further facts will be referenced in our discussion.

DISCUSSION
The Post-Permanency Planning Review Hearing of May 25
Respondent filed a motion to dismiss this appeal on the ground that at later hearings the juvenile court afforded appellant an opportunity to participate in contested hearings. We denied the motion for two reasons: (1) it was not clear from the motion whether the later hearings addressed the same issues appellant desired to address on May 25; and (2) we felt the need to address what we perceive to be ongoing problems between the juvenile court and appellant. We conclude that the issue is not moot.
Section 366.3 addresses the subject of post-permanency planning reviews. Specifically, subdivisions (d) and (e) are pertinent here. Subdivision (d)(4) states: "If the child is in a placement other than the home of a legal guardian and jurisdiction has not been dismissed, the status of the child shall be reviewed at least every six months.... [¶] The court shall determine whether or not reasonable efforts to make and finalize a permanent placement for the child have been made."
Subdivision (e)(6) of section 366.3 generally requires that in conducting the review pursuant to subdivision (d), the court address multiple factors concerning the welfare of the child, including the appropriateness of the placement, the parent's progress toward alleviating or mitigating the causes necessitating foster care, and the likely date "by which the child may be returned to and safely maintained in the home, placed for adoption, legal guardianship, or in another planned permanent living arrangement." Subdivision (e)(8) also provides: "Unless their parental rights have been permanently terminated, the parent or parents of the child are entitled to receive notice of, and participate in, those hearings. It shall be presumed that continued care is in the best interests of the child, unless the parent or parents prove, by a preponderance of the evidence, that further efforts at reunification are the best alternative for the child. In those cases, the court may order that further reunification services to return the child to a safe home environment be provided to the parent or parents for a period not to exceed six months." (Italics added.)
The right of a parent to a contested hearing at the post-permanency planning review was affirmed in In re Kelly D. (2000) 82 Cal.App.4th 433, 98 Cal.Rptr.2d 188. There, the father of the minor requested a contested hearing on the issue of visitation. The trial court denied the request and reduced the father's visitation rights. The court of appeal reversed and remanded the matter with direction that the juvenile court conduct a contested hearing.
Specifically addressing the language of section 366.3, subdivision (e), the court states:

*640 "As appellant has argued, subdivision (e) of section 366.3 expressly entitles the parents of a minor in long-term foster care to notice of and participation in the six-month status review hearing. `Notice' of that hearing must include notice to the parent of any proposed departmental modifications to existing juvenile court orders. Moreover, to `participate' in the hearing connotes involvement as a party to the proceeding, one essential aspect of which is the reasonable expectation that parents could challenge departmental proposals and proposed court modifications.
"....
"It is true that, by the time the juvenile court conducts a status review hearing, the minor is in a placement other than with the parents. However, that situation is not necessarily a permanent one. As subdivision (e) provides, a parent has the opportunity to demonstrate that additional efforts at reunification will promote the best interests of the minor. In such a case, the court may order further reunification services for the parent. (§ 366.3, subd. (e).) Thus, it is possible that parent and child could be reunited." (In re Kelly D., supra, 82 Cal.App.4th at p. 438, 98 Cal.Rptr.2d 188.)
The court then turned to the concern, apparently expressed by the Human Services Department, that allowing contested hearings may bog down the dependency process. "Review hearings are a critical aspect of our state's dependency system. We recognize the expeditious resolution of these proceedings is an essential goal of that system. But the Legislature has decided that accommodating the wishes of, and, indeed, rights of parents to attempt to reestablish the parents' relationship with a child is a vital objective as well." (In re Kelly D., supra, 82 Cal.App.4th at p. 439, 98 Cal.Rptr.2d 188.)
The Court of Appeal also cited and noted its previous ruling in In re James Q. (2000) 81 Cal.App.4th 255, 96 Cal.Rptr.2d 595, where it held that "the juvenile court may not deny a party the right to a contested review hearing, even if no offer of proof was tendered." (In re Kelly D., supra, 82 Cal.App.4th at p. 439, fn. 4, 98 Cal.Rptr.2d 188.)
Finally, the court noted that the right to a contested hearing contemplates that a parent "has the right to testify and otherwise submit evidence, cross-examine adverse witnesses, and argue his [or her] case." (In re Kelly D., supra, 82 Cal. App.4th at p. 440, 98 Cal.Rptr.2d 188.)
We agree with these conclusions reached by the Third District and conclude that the juvenile court erred by failing to afford appellant a contested hearing on May 25. At that time, appellant and her counsel made it clear that she wished to challenge prior juvenile court findings and orders and to contest portions of the report prepared for the April 25 hearing. While the record indicates that appellant did not tender an offer of proof in the juvenile court, pursuant to James Q., supra, it was enough that appellant objected to the DCFS report and requested an evidentiary hearing.
We understand from our prior review of orders issued in this case that appellant can be more demanding on the system than others. But that does not justify denying her the rights afforded under the law. The order of May 25 denying appellant a contested hearing is reversed and the matter is remanded with directions to afford her the contested hearing.

*641 Section 388 Petition

Appellant argues that the juvenile court denied her due process when it summarily denied her section 388 petition. Respondent correctly points out that appellant's notice of appeal does not specifically identify the order summarily denying her section 388 petition, and argues that we should not consider it on appeal.
While a notice of appeal must identify the particular order being appealed (Cal. Rules of Court, rule 1), and "a notice of appeal will not be considered adequate if it completely omits any reference to the judgment being appealed" (Shiver, McGrane & Martin v. Littell (1990) 217 Cal.App.3d 1041, 1045, 266 Cal. Rptr. 298), the circumstances here warrant liberal interpretation of appellant's notice of appeal which she prepared herself. The issues appellant attempted to raise in her section 388 petition relate back to material contained within the report prepared for the April 25 hearing, which was not received by appellant until the May 25 hearing. If she had been granted a contested hearing on May 25, additional evidence may have generated a result which would have made her section 388 petition unnecessary. Or, if the result had not changed, it may have generated further information which appellant could have used in connection with her section 388 petition.
Section 388, subdivision (a) allows a parent of a child who is a dependent of the juvenile court to petition the court, "upon grounds of change of circumstance or new evidence, ... for a hearing to change, modify, or set aside any order of court previously made or to terminate the jurisdiction of the court." Subdivision (c) of section 388 states: "If it appears that the best interests of the child may be promoted by the proposed change of order ... or termination of jurisdiction, the court shall order that a hearing be held and shall give prior notice."
"The parent need only make a prima facie showing to trigger the right to proceed by way of a full hearing. [Citation.]" (In re Marilyn H. (1993) 5 Cal.4th 295, 310, 19 Cal.Rptr.2d 544, 851 P.2d 826.) "A `prima facie' showing refers to those facts which will sustain a favorable decision if the evidence submitted in support of the allegations by the petitioner is credited. [Citation.]" (In re Edward H. (1996) 43 Cal.App.4th 584, 593, 50 Cal.Rptr.2d 745.) "[A] petition must be liberally construed in favor of its sufficiency [citation] and a hearing may be denied only if the application fails to reveal any change of circumstance or new evidence which might require a change of order. Only in this limited context may the court deny the petition ex parte. [Citation.]" (In re Jeremy W. (1992) 3 Cal.App.4th 1407, 1413-1414, 5 Cal.Rptr.2d 148.) Conversely, the hearing on the section 388 petition "is only to be held if it appears that the best interests of the child may be promoted by the proposed change of order, which necessarily contemplates that a court need not order a hearing if this element is absent from the showing made by the petition. [Citation.]" (In re Zachary G. (1999) 77 Cal.App.4th 799, 807, 92 Cal.Rptr.2d 20, fn. omitted, opn. mod. Jan. 19, 2000.)
On review, we do not disturb a juvenile court's denial of a section 388 petition absent abuse of discretion by the juvenile court. Hence, when two or more inferences can be reasonably deduced from the facts, we may not substitute our decision for the juvenile court's decision. (In re Stephanie M. (1994) 7 Cal.4th 295, 318-319, 27 Cal.Rptr.2d 595, 867 P.2d 706.)
Appellant's petition relied in part upon excerpts from the report prepared by registered nurse Vicki Carrera. Referring *642 to Josiah's recent course, Carrera stated that Josiah "has had emesis [vomiting] after a meal, but has had no symptoms of abdominal discomfort, or diarrhea." She noted that Josiah's continued regular episodic bouts of vomiting sometimes "appear[ ] to be associated with reflux and other times appear[ ] to possibly be behavioral." She also reported that Josiah "continues to fail to gain weight." Referencing these portions of the report, appellant argued that "the very conditions that brought [Josiah] to the attention of the court in the first instance and which were blamed on appellant's abuse and neglect continue to persist, seriously undermine the very basis for dependency jurisdiction in the first instance." Appellant also referenced Dr. Ament's report which she acknowledged was previously rejected by the juvenile court. She stated that while his report is not new evidence, it takes on additional significance in light of Carrera's report: "It provided additional medical evidence some three years hence, which substantiated his conclusion that the minor's failure to thrive was the result of organic causes, not appellant's abuse or neglect."
DCFS argues that appellant disregards the major concern that brought Josiah to the attention of the juvenile court: "appellant's bizarre behaviors prevented her `from caring for and understanding and cooperating in [her son's] medical needs, and that resulted in willful cruelty being inflicted on this minor.'" This is precisely the issue appellant attempts to address in her petition when she argues that Nurse Carrera's evidence demonstrates her son continues to have the same medical problems despite being removed from her custody.
Given the entire record, including the failure to allow appellant to have a contested hearing on May 25, we lack confidence in the trial court's summary denial of the petition. Because the matter is being remanded with directions to conduct the contested review hearing, the appropriate course is to set aside the summary denial of the section 388 petition and return the parties to the same position they were in before the juvenile court denied appellant's request for a contested hearing.

DISPOSITION
The orders of May 25, 2001, denying appellant a contested hearing under subdivision (e) of section 366.3, and May 31, 2001, summarily denying appellant's section 388 petition, are reversed. The matter is remanded for the juvenile court to conduct a contested review hearing.
We concur: CHARLES S. VOGEL, P.J., and CURRY, J.
NOTES
[1] All further references will be to the Welfare and Institutions Code unless otherwise noted.