Filed12/19/24  In re Haylee H. CA2/7

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| In re HAYLEE H. et al., Persons Coming Under the Juvenile Court Law. | B333978 <br><br> (Los Angeles County Super. Ct. No. 21CCJP03242A–C) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, <br><br>      Plaintiff and Respondent, <br><br> v. <br><br> KRISTEN G., <br><br>      Defendant and Appellant. | |

APPEAL from orders of the Superior Court of Los Angeles County, Daniel Zeke Zeidler, Judge.  Affirmed.

Jesse McGowan, under appointment by the Court of Appeal, for Defendant and Appellant.

Dawyn R. Harrison, County Counsel, Kim Nemoy, Assistant County Counsel, and Kelly G. Emling, Deputy County Counsel, for Plaintiff and Respondent.

_____

Kristen G.[1] (Mother) appeals from the juvenile court's orders denying her Welfare and Institutions Code section 388[2] petitions and establishing a permanent plan of legal guardianship for her children following a section 366.26 hearing. In ordering the guardianships, the court declined to make visitation orders for Mother, finding that visitation would be detrimental to the children.

On appeal, Mother argues that the juvenile court denied her right to due process by not holding a contested section 366.26 evidentiary hearing on the issue of visitation. Mother never requested a contested evidentiary hearing and therefore forfeited this claim.

Mother also contends that the juvenile court erred in denying her earlier section 388 petitions without an evidentiary hearing on the issue of visitation. Because the juvenile court did not abuse its discretion in finding Mother did not make a prima facie showing of a change in circumstances or new evidence, or

---

[1] In some parts of the record, Mother's name is spelled "Kristin." Our review of the record reveals that the correct spelling is "Kristen," which is what we use in this opinion.

[2] All further statutory references are to the Welfare and Institutions Code.

2

that her requested relief would be in the children's best interests, no evidentiary hearing was warranted. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

A.   *Summary of Proceedings Leading to the Juvenile Court's Suspension of Mother's Visitation with the Children*

Mother has three children who are the subject of this appeal: Haylee (born 2012), Maya (born 2013), and Daniel (born 2018). Steven H. (Presumed Father) is the presumed father of all three children. Howard A. (Biological Father) is the biological father of Haylee.[3]

In October 2021, the juvenile court sustained petitions alleging the children were at risk of serious physical harm due to domestic violence and substance abuse. The court removed the children from the parents and placed care, custody, and control under the supervision of the Los Angeles County Department of Children and Family Services (DCFS). The children remained placed in the care of their paternal great aunt and uncle.

The juvenile court ordered family reunification services for all three parents. Mother's case plan included weekly random and on-demand testing for drugs and alcohol, a domestic violence support group for victims, conjoint counseling with the children, parenting education, and compliance with any criminal court orders. The court also ordered DCFS to refer Mother to a parent partner from the Parents in Partnership program. Mother was to

---

[3]   Because neither Presumed Father nor Biological Father appeals the juvenile court's orders, this procedural and factual background focuses on Mother.

3

receive monitored two-hour visits, a minimum of twice a week. The juvenile court set a six-month review hearing.

On February 10, 2022, before the six-month review hearing took place, DCFS filed a request that the juvenile court restrict Mother's visitation to the DCFS office with a DCFS employee present. DCFS was concerned about Mother's comments to the children during visits about the case and their caretaker, her ongoing contact with Presumed Father, and her bringing a poorly restrained dog to a visit at a fast food restaurant. Following a hearing, the juvenile court granted DCFS's request to restrict Mother's twice-a-week visits to the DCFS office. Mother was not to bring her dog to visits unless she had a letter in writing from a licensed therapist designating the dog as a service animal.

A couple weeks later, on February 22, 2022, the juvenile court held a progress hearing. DCFS provided the visitation schedule but also raised additional concerns with Mother's visitation and her negative interactions with DCFS. DCFS requested that the court further restrict Mother's visitation to once a week for one hour. The court declined to modify the visitation orders it had made less than two weeks earlier.

In April and June 2022, the juvenile court held the six-month review hearing. DCFS continued to recommend monitored visitation for Mother. According to DCFS, Mother had not completed anything in her case plan, had not shown behavioral changes, continued to discuss the case inappropriately with the minors during visits, and refused to drug test. The court found Mother was in "partial" or "substantial" compliance with her case plan but noted the concerns raised by DCFS and that Mother had missed many visits. Ultimately, the court ordered additional reunification services to the 12-month review date.

4

The court maintained monitored visitation and further ordered that "any visit to which the mother brings a dog or mentions the father or discusses return or other case issues is to be terminated immediately."

B.     *The Juvenile Court Terminates Mother's Reunification Services and Grants DCFS's Section 388 Petition to Suspend Mother's Visitation with the Children*

In advance of the 12-month review hearing, DCFS filed a section 388 petition requesting the court terminate Mother's visits altogether.  The juvenile court addressed the section 388 petition at the 12-month review hearing on October 11, 2022.

With respect to visitation, DCFS provided evidence that Mother had not made significant progress in addressing the issues in her case plan, she was inconsistent with her visits, she continued not to drug test, she refused to sign a release of information to allow DCFS to obtain updates from her programs, and DCFS had been otherwise unable to confirm participation in domestic violence classes or individual counseling.  Mother missed many visits with the children and arrived late to the visits she attended; in turn, the children at times refused to attend visits with Mother.  Although there were a few good visits, the children reported that Mother did not listen and was mean to them.  Despite social worker admonishments and court orders, Mother continued to talk to the children about the case, make promises about return to her care, and bring dogs to visits.

The therapist for two of the children reported that Mother's visits were very stressful and detrimental to the children.  One of the children in particular was under tremendous stress, which the therapist believed could lead to a mental break.  The child

5

was diagnosed with adjustment disorder with anxiety and had symptoms of "nervousness, sadness, tearfulness, withdrawal, anger, poor concentration[,] and low self-esteem." The child further exhibited "increased severity of these symptoms upon returning" from visits or when the parents did not show up at visits.

The juvenile court granted DCFS's section 388 petition and suspended Mother's visitation. The court found that ongoing visitation with Mother would be detrimental to the children at that time. The juvenile court ordered the children to receive weekly in-person therapy and instructed DCFS to return to court if it assessed it to be appropriate for Mother to resume visits.

As for the 12-month review, the court terminated Mother's reunification services. However, the juvenile court ordered continued reunification efforts for both fathers and set the 18- month review.

C.      *Mother Requests the Juvenile Court Reinstate Visitation with the Children at the 18-month Review Hearing, and the Court Denies the Request*

Three months later, on January 11, 2023, the juvenile court held the 18-month review hearing. The hearing focused on the fathers' ongoing reunification efforts. Nonetheless, Mother orally requested her visitation be reinstated. The juvenile court denied the request. The court ordered DCFS "to continue to assess the mother for contact with the children" and gave DCFS "discretion to walk the matter on calendar to start contact with the mother." The juvenile court terminated reunification services for Biological Father. However, the court found "exceptional circumstances" to continue services for Presumed Father and set a continued 18-

month review hearing, which in effect, was a 24-month review hearing.

D. *The Court Sets a Section 366.26 Hearing and Denies Mother's Renewed Request for Resumption of Visitation*

At the next hearing, on June 22, 2023, the court terminated Presumed Father's services and set a section 366.26 hearing. Mother again orally requested that her visitation be reinstated. The court denied the request, indicating that there was no sufficient change of circumstances or new information justifying modifying the court's previous order suspending visitation.[4]

E. *Mother Files the Section 388 Petitions at Issue on Appeal*

On October 9, 2023, the day before the section 366.26 hearing, Mother filed a section 388 petition for each child. Mother's section 388 petitions requested the court "[t]ake the [section 366.]26 hearing off calendar and place [the] children [in the] home of parent, mother, or reinstate mother's family reunification services with unmonitored visitation." When asked on the form why the requested action would be in the children's best interest, Mother wrote, "It is in the children's best interest to return to their mother's care or, at a minimum, resume visitation." She explained that she had "developed the skills and strategies necessary to resolve the underlying issues that led to the children's removal from her care and custody." Mother further stated that "[i]n efforts to reunify her family, [she] ha[d]

---

[4] Although the court articulated its denial of the request in the language of section 388, there was no section 388 petition pending before the court.

7

completed two residential treatment programs, ha[d] begun efforts to develop her parenting skills, and remain[ed] stably employed."

In support of her contentions, Mother attached the following evidence:

(1) an October 3, 2023 letter from Los Angeles Centers for Alcohol and Drug Abuse (L.A. CADA) indicating that she was admitted into a residential treatment program on September 6, 2022 and successfully completed an inpatient program on October 11, 2022;

(2) an April 4, 2023 letter from L.A. CADA indicating that she enrolled in a residential treatment program on January 10, 2023 and graduated on March 7, 2023, during which time she engaged in substance abuse counseling, group and individual therapy, random drug testing, and domestic violence groups;

(3) a certificate from DCFS showing that Mother attended a parent partnership orientation on March 10, 2023;

(4) a certificate from Child Parent Institute confirming three hours of participation in a parenting class in March 2023;

(5) an email dated March 15, 2023, which appeared to confirm employment with a law office beginning the next day on March 16, 2023; and

(6) a character letter from what appeared to be a long-time friend.

F.    *The Juvenile Court Denies Mother's Section 388 Petitions and Orders Legal Guardianship Under Section 366.26*

On November 9, 2023, the juvenile court held a prima facie hearing on Mother's section 388 petitions. After hearing argument, the juvenile court denied the section 388 petitions.

8

The court noted that Mother's reunification services were terminated in October 2022, and she had not provided sufficient new information or change of circumstances since then. She presented information on programs from January to March 2023. For the most part, the evidence before the court predated April 2023. Mother also had not shown behavioral changes. The court concluded that Mother did not make a prima facie showing of a change of circumstances or new information, or that the best interests of the children would be served by granting the section 388 petitions. Accordingly, the court denied the petitions without an evidentiary hearing.

The juvenile court then moved to the section 366.26 hearing. The proposed permanent plan for the children was legal guardianship with their relative caregivers. The court indicated the evidence it had before it was DCFS's reports and updates, as well as its own earlier orders. The court then asked, "Any further evidence or witnesses from any counsel?" With no responses, the court turned first to Mother's counsel to address the section 366.26 recommendations. Counsel stated that Mother was opposed to legal guardianship and would ask the court not to order it. Mother feared she would not have visitation in the future, given the family's past feelings towards her. Mother's counsel also stated, Mother "would renew her request that she's made before in this court that you reinstate visits, even monitored visits, if the court is inclined to order legal guardianship."

At the conclusion of argument, the juvenile court ordered a permanent plan of legal guardianship for the minors. The court continued to order no visits for Mother, reiterating its previous

9

detriment finding, and ordered Presumed Father to have unmonitored visits with all children.

Mother timely appealed.

## DISCUSSION

A.  *Mother Forfeited Any Due Process Claim to a Contested Section 366.26 Hearing on Visitation by Not Requesting One*

When the juvenile court orders a permanent plan of legal guardianship, it "shall also make an order for visitation with the parents . . . unless the court finds by a preponderance of the evidence that the visitation would be detrimental to the physical or emotional well-being of the child."  (§ 366.26, subd. (c)(4)(C).)  Parents generally have a due process right to a contested evidentiary hearing on issues upon which the agency bears the burden of proof.  (See *In re A.B.* (2022) 79 Cal.App.5th 906, 930–931; see also *In re Armando L.* (2016) 1 Cal.App.5th 606, 620–621 [juvenile court's denial of mother's request for contested evidentiary hearing violated due process].)  At a contested evidentiary hearing, parents have the right to present evidence, to confront and cross-examine witnesses, and to call witnesses on their behalf.  (Cal. Rules of Court, rule 5.534(g)(1)(D).)

Here, Mother did not request a contested section 366.26 hearing on the issue of visitation or otherwise.  Because Mother did not request a contested evidentiary hearing, she forfeited her claim that the juvenile court erred in not holding one.  (See *In re Malick T.* (2022) 73 Cal.App.5th 1109, 1127 ["[F]orfeiture generally applies . . . when a party failed to ask in the juvenile court for relief being sought on appeal"]; cf. *McMillian v. Stroud* (2008) 166 Cal.App.4th 692, 704–705 [probate court did not err in

10

not holding an evidentiary hearing where none was expressly requested].) Notably, Mother has provided no authority requiring the juvenile court to hold a contested evidentiary hearing sua sponte. On the contrary, in every case Mother cites for the proposition that a parent has a right to a contested hearing, the parent expressly requested such a hearing or at least the opportunity to cross-examine witnesses. (See, e.g., *In re Armando L.* (2016) 1 Cal.App.5th 606, 613; *David B. v. Superior Court* (2006) 140 Cal.App.4th 772, 776; *In re Tamika T.* (2002) 97 Cal.App.4th 1114, 1118; *In re Kelly D.* (2000) 82 Cal.App.4th 433, 439; *In re Dolly D.* (1995) 41 Cal.App.4th 440, 444.)[5]

Mother argues the forfeiture rule should not apply here. Because the juvenile court denied her section 388 petitions without an evidentiary hearing, she contends that it would have been futile to raise the issue again during the section 366.26 hearing. We disagree.

By focusing on the portion of the hearing that dealt with the section 388 petitions, Mother ignores what happened at the section 366.26 hearing itself. At the start of the section 366.26 hearing, the court set forth the evidence it had before it and asked whether there was "[a]ny further evidence or witnesses from any counsel[.]" No party, including Mother, sought to introduce further evidence or witness testimony.

---

[5] We assume, without deciding, that parents generally have a right to contested section 366.26 hearings on visitation where legal guardianship is the proposed permanent plan. (See *In re A.B.*, *supra*, 79 Cal.App.5th at pp. 930–931 [discussing case law addressing when parents have a due process right to a contested hearing and when an offer of proof may be required to trigger such a right].)

11

The juvenile court then turned immediately to Mother's counsel to hear Mother's position on section 366.26 issues. Mother's counsel stated that Mother was "opposed to legal guardianship and would ask the court not order it today." Counsel went on to "renew [Mother's] request that she's made before in this court that [the court] reinstate visits, even monitored visits, if the court is inclined to order legal guardianship."

Mother's argument that it would have been futile to request a contested evidentiary hearing is therefore belied by the record. The juvenile court gave Mother the opportunity to introduce evidence and witness testimony for the section 366.26 hearing. She chose not to do so. It is also evident Mother was aware of her ability to litigate the visitation issue during the section 366.26 hearing because she did so by renewing her request for visitation. If Mother wanted a contested evidentiary hearing beyond that, she should have requested one. Nothing before us supports Mother's suggestion that the juvenile court would have automatically denied such a request.

B.   *The Juvenile Court Did Not Abuse Its Discretion in Denying Mother's Section 388 Petitions Without an Evidentiary Hearing*

Mother further claims the juvenile court erred in not holding a contested evidentiary hearing on the issue of visitation because her section 388 petitions made a prima facie showing for relief. This claim, too, is unavailing. The juvenile court did not abuse its discretion in finding that Mother did not meet her prima facie burden to merit an evidentiary hearing.

12

1. *Applicable Law on Section 388 Petitions and Standard of Review*

Under section 388, a parent may petition the court to change, modify, or set aside a previous court order. To prevail on a section 388 petition, the parent ultimately bears the burden to show by a preponderance of the evidence that there is a change of circumstances or new evidence, and the proposed modification is in the child's best interests. (*In re Malick T., supra,* 73 Cal.App.5th at p. 1122, citing *In re Jasmon O.* (1994) 8 Cal.4th 398, 414–415, *In re Stephanie M.* (1994) 7 Cal.4th 295, 317.)

Initially, however, the parent "need only make a prima facie showing to trigger the right to proceed by way of a full hearing." (*In re Marilyn H.* (1993) 5 Cal.4th 295, 310.) Section 388 "petitions are to be liberally construed in favor of granting a hearing to consider the parent's request." (*Id.* at pp. 309–310; accord, *In re R.A.* (2021) 61 Cal.App.5th 826, 836; see Cal. Rules of Court, rule 5.570(a) ["A petition for modification must be liberally construed in favor of its sufficiency"].) "'A "prima facie" showing refers to those facts which will sustain a favorable decision if the evidence submitted in support of the allegations by the petitioner is credited.'" (*In re B.C.* (2011) 192 Cal.App.4th 129, 141.)

"[I]f the petition fails to make a prima facie showing (1) of a change of circumstances or new evidence requiring a changed order, and (2) the requested change would promote the best interests of the child," the juvenile court may summarily deny it without a hearing. (*In re Justice P.* (2004) 123 Cal.App.4th 181, 188–189; *In re R.A., supra,* 61 Cal.App.5th at p. 836.) "[A] change of circumstances" requires that circumstances have substantially and materially changed. (*In re Ernesto R.* (2014) 230 Cal.App.4th

13

219, 223.) "[N]ew evidence" means """"material evidence that, with due diligence, the party could not have presented at the dependency proceeding at which the order, sought to be modified or set aside, was entered."""" (*In re Matthew M.* (2023) 88 Cal.App.5th 1186, 1195.)

We review the juvenile court's summary denial of a section 388 petition for abuse of discretion. (*In re R.A.*, *supra*, 61 Cal.App.5th at p. 837; *In re Anthony W.* (2001) 87 Cal.App.4th 246, 250.) "Under this standard of review, we will not disturb the decision of the trial court unless the trial court exceeded the limits of legal discretion by making an arbitrary, capricious or patently absurd determination." (*In re A.S.* (2009) 180 Cal.App.4th 351, 358, citing *In re Geoffrey G.* (1979) 98 Cal.App.3d 412, 421.)

      2.    *The Juvenile Court Did Not Abuse Its Discretion in Denying Mother's Section 388 Petitions Without an Evidentiary Hearing*

The juvenile court did not order an evidentiary hearing on Mother's section 388 petitions because it found she did not make a prima facie showing of a change in circumstances or new evidence, or that the requested relief was in the best interests of the children. We find no abuse of discretion.

First, the record supports the juvenile court's determination that Mother made an insufficient showing of changed circumstances or new evidence. Mother's section 388 petitions were filed on October 9, 2023. The juvenile court had suspended Mother's visitation on October 11, 2022—almost one year earlier. Although one of Mother's letters was obtained in October 2023, it confirmed only that she engaged in a program a

14

year earlier for about a month between September 6 and October 11, 2022.  The program was completed the same day the juvenile court made its order suspending visitation, so it certainly could not constitute proof of "a change in circumstances" since then.  Nor could it be deemed "new evidence," as there was no assertion as to why "with due diligence, [Mother] could not have presented [it] at the dependency proceeding at which the order, sought to be modified or set aside, was entered."  (*In re Matthew M.*, *supra*, 88 Cal.App.5th at p. 1195.)

The remaining evidence Mother proffered in support of changed circumstances was focused on a short period between January and March 2023 when she appeared to be engaging in services.  The juvenile court did not err in finding that these circumstances, even if true, were insufficient on their face to merit an evidentiary hearing.  This is especially so when viewed in the context of the long history in this case and the passage of a full year since the court's order suspending visitation.  (See *In re Justice P.*, *supra*, 123 Cal.App.4th at p. 189 ["In determining whether the petition makes the necessary [prima facie] showing, the court may consider the entire factual and procedural history of the case"].)

Second, the juvenile court did not abuse its discretion in finding no prima facie evidence that Mother's requested relief would be in the children's best interests.  Mother's section 388 petitions contained only the conclusory assertion that "[i]t is in the children's best interest to return to their mother's care or, at a minimum, resume visitation."  (See *In re K.L.* (2016) 248 Cal.App.4th 52, 62–63 ["court did not err in concluding that . . . broad assertions did not constitute a prima facie showing that the proposed placement changes would be in the best

interests of the children"].)  The remainder of the best interests section of the petitions merely recapped Mother's evidence in support of a change in circumstances.  But the law is clear that a "parent must sufficiently allege *both* a change in circumstances or new evidence *and* the promotion of the child's best interests." (*In re G.B.* (2014) 227 Cal.App.4th 1147, 1157, citing *In re Zachary G.* (1999) 77 Cal.App.4th 799, 808.)  Mother did not do so here.

## DISPOSITION

The juvenile court's orders are affirmed.


PULOS, J.*

We concur:


FEUER, Acting P. J.


STONE, J.

---

*     Judge of the San Diego County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.