Filed 4/17/13  In re Rolando B. CA2/7

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| In re ROLANDO B., a Person Coming Under the Juvenile Court Law. | B244300 |
| | (Los Angeles County Super. Ct. No. CK84705) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, | |
| Plaintiff and Respondent, | |
| v. | |
| PATRICIA S., | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Terry Troung, Juvenile Court Referee.  Affirmed.

Thomas S. Szakall, under appointment by the Court of Appeal, for Patricia S.

John F. Krattli, County Counsel, James M. Owens, Assistant County Counsel, and Jessica S. Mitchell, Senior Associate County Counsel, for Plaintiff and Respondent.

_____

Patricia S., the mother of two-year-old Rolando B., appeals from the juvenile court's order terminating her parental rights pursuant to Welfare and Institutions Code section 366.26.[1]  Patricia contends the court erred when it refused her request for a hearing to demonstrate her bond with Rolando warranted application of the parent-child relationship exception to the termination of parental rights provided in section 366.26, subdivision (c)(1)(B)(i).  We affirm.

**FACTUAL AND PROCEDURAL BACKGROUND**

1.  *The Initiation of Dependency Proceedings*

Rolando was born in July 2010 with a positive toxicology screen for methamphetamine.  Patricia, who had a history with the Los Angeles County Department of Children and Family Services (Department) in connection with her two other children, then 14-year-old Josephine T. and nine-year-old A.T.,[2] also tested positive for methamphetamine.  Patricia agreed to participate in a voluntary family maintenance program that included drug counseling and parenting classes and required drug and alcohol testing.

On October 4, 2010 a Department social worker contacted the maternal grandmother with whom Patricia and the children were living to see how they were doing.  The maternal grandmother reported Patricia had been under the influence of alcohol earlier that week while she was at home with the children and "was out of control."  The maternal grandmother called the police.  When they arrived, Patricia was sitting on the kitchen floor where she had urinated several times.  The maternal grandmother told the social worker Patricia had a serious drug problem and needed help.  The next day the social worker interviewed Patricia, Josephine and A.T.  Patricia denied she had a problem with alcohol.  Josephine said she wanted her mother to get treatment

---

[1]     Statutory references are to the Welfare and Institutions Code.

[2]     Between April 2005 and July 2010 four referrals about Patricia had been made alleging general neglect and one for physical abuse.  Two of the general neglect referrals were found substantiated.

2

because she had been abusing alcohol for many years, A.T. always "covered" for Patricia and Josephine wanted to remain with the maternal grandmother while her mother received treatment. A.T. denied Patricia was intoxicated when the police came to the house.

A team decision meeting was held on October 13, 2010 with the Department, Patricia, the maternal grandmother and Jose T., the presumed father of Josephine and A.T. At the conclusion of the meeting Patricia agreed Josephine and A.T. would be placed with Jose and Rolando with the maternal grandmother while Patricia attended a drug treatment program. When Josephine was told she would be living with her father, she became very upset.

On October 18, 2010 the Department filed a petition to declare Rolando, Josephine and A.T. dependent children of the juvenile court under section 300, subdivisions (a), (b) and (g), alleging serious physical harm, failure to protect and no provision for support based on the history of violent altercations between Patricia and Rolando's father, Patricia's history of substance abuse and her current use of alcohol and methamphetamine. At the detention hearing the court found a prima facie case for detaining the children and ordered Rolando placed in the home of the maternal grandmother, Josephine and A.T. placed with Jose, and Patricia to have monitored visitation with all three children.

In a November 18, 2010 jurisdiction/disposition report, the Department noted Patricia had failed to comply with her case plan, denied she abused drugs and alcohol and blamed her mother for reporting her to the Department. The report stated Josephine and A.T., who were very protective of their mother, wanted to live with her and visit their father. Additionally, the maternal grandmother reported Patricia came to the home on November 8, 2010, apparently under the influence of drugs or alcohol, became violent and broke two windows.

At the December 8, 2010 jurisdiction and disposition hearing the court sustained an amended version of the section 300 petition after Patricia pleaded no contest to the allegations. The court declared the children dependents of the court and ordered

3

Josephine and A.T. placed with Jose and Rolando suitably placed by the Department.  It appears Rolando was placed with the maternal grandmother.  The court ordered family reunification services and visitation for Patricia and directed that she participate in individual counseling, parenting classes, drug abuse treatment and random drug testing.

　　2. *The Review Hearings and Reunification Efforts*

In an interim report as of February 10, 2011 the Department stated Josephine had been visiting Rolando, who was still living with the maternal grandmother, and acting appropriately, but had failed to comply with the court's orders, including that she enroll in a drug treatment program.  She had twice tested positive for amphetamines.  The report also noted Josephine, used to living in a household with no rules or supervision, had been refusing to follow Jose's rules, repeatedly threatening to run away or hurt herself.  The Department recommended family reunification services be terminated for Patricia with respect to Josephine and A.T., but continue for Rolando.

Josephine committed suicide on April 25, 2011.  In a report prepared for the June 2, 2011 six-month review hearing the Department informed the court Patricia, who had been admitted to an inpatient treatment program in early March 2011, left the program against the advice of the staff after she received the news.  Although Patricia returned to the program in mid-May 2011, the Department recommended reunification services be terminated because Patricia's actions did not show she was committed to reunification.  The court terminated jurisdiction as to Josephine and set a contested hearing for July 21, 2011.  At the contested hearing the court ordered continued family reunification services based on progress Patricia had made in her drug treatment program and the Department's revised recommendation

For the 12-month review hearing on December 1, 2011 the Department again recommended reunification services be terminated.  Although the maternal grandmother had reported Patricia's visits with Rolando and A.T. were going well, Patricia had failed to participate in drug testing on four occasions after she was released from the inpatient drug treatment program.  In addition, she was terminated from an outpatient program after she had failed to comply with its rules.  The Department also noted Rolando had

4

developed a strong bond with the maternal grandmother—during visits with Patricia he would seek out the maternal grandmother when he cried or wanted something—and she was committed to adopting him.

At the 12-month review hearing the court terminated its jurisdiction over A.T., ordering sole physical custody to Jose and joint legal custody to Jose and Patricia. The court set a contested hearing regarding the Department's recommendation reunification services be terminated for Patricia and Rolando and ordered continued monitored visitation for a minimum of four hours per week.

On January 9, 2012 the Department reported Patricia had failed to show up for testing on three dates in December 2011. Nevertheless, at the January 11, 2012 contested hearing the court ordered continued reunification services, explaining, "The only reason why I am going to give you additional time is because your son is with his grandmother, and, most likely, the plan is going to be legal guardianship. So it doesn't hurt him for me to give you a little more time because I know what the plan will be. But if your son had been in foster care, I would not be doing this ma'am. I would be looking at terminating your parental rights. You messed up."

On February 14, 2012 Patricia tested positive for alcohol after a random test. When the Department social worker confronted her during a telephone call, Patricia claimed she tested positive because she had been sick and drank NyQuil. The social worker asked Patricia to come to the Department office for a meeting. Patricia failed to attend and did not return several telephone calls. Patricia's individual therapy case manager told the social worker Patricia's case was going to be terminated because she had not attended therapy since enrollment in early January 2012. Patricia's drug counselor indicated Patricia had been attending Alcoholics Anonymous meetings and admitted she had drunk wine the day she tested positive for alcohol. When the social worker finally met with Patricia in early April 2012, Patricia continued to deny drinking alcohol and claimed she was in compliance with the court's orders. In its April 20, 2012 report the Department yet again recommended termination of family reunification services.

5

The court terminated reunification services at the May 23, 2012 contested 18-month review hearing. The court explained, "At this time, time has run out for [Patricia]. She has had the benefit of 18 months in order to reunify with [Rolando] even though he was under the age of three when he entered the system." The court permitted unmonitored visits in the maternal grandmother's home if Patricia was in compliance with her case plan and set a section 366.26 selection and implementation hearing, which Patricia was ordered to attend.

3. *The Section 366.26 Selection and Implementation Hearing*

For the September 20, 2012 section 366.26 hearing the Department reported the adoption home study for Rolando had been approved, Rolando was attached to the maternal grandmother and she was committed to adopting him. The Department recommended Rolando remain suitably placed with her, adoption be completed and Patricia's parental rights be terminated.

Patricia did not appear at the section 366.26 selection and implementation hearing. Her attorney asked the matter be set for a contested hearing. In response to the court's request for an offer of proof, counsel stated, "Apparently, mother has been visiting regularly, and I'd like to call her to question her regarding [the parental] bond exception." The court denied the request stating, "Well, she was noticed for today's proceeding; she's not here." The court then terminated Patricia's parental rights and transferred Rolando's care, custody and control to the Department to complete adoption by the maternal grandmother. Patricia filed a timely notice of appeal.

**DISCUSSION**

1. *Governing Law*

Section 366.26 directs the juvenile court in selecting and implementing a permanent placement plan for a dependent child. The express purpose of a section 366.26 hearing is "to provide stable, permanent homes" for dependent children. (§ 366.26, subd. (b).) Once the court has decided to end parent-child reunification services, the legislative preference is for adoption. (§ 366.26, subd. (b)(1); *In re Celine R.* (2003) 31 Cal.4th 45, 53["[I]f the child is adoptable . . . adoption is the

6

norm. Indeed, the court must order adoption and its necessary consequence, termination of parental rights, unless one of the specified circumstances provides a compelling reason for finding that termination of parental rights would be detrimental to the child."]; see *In re Marilyn H.* (1993) 5 Cal.4th 295, 307 [once reunification efforts have been found unsuccessful, the state has a "compelling" interest in "providing stable, permanent homes for children who have been removed from parental custody" and the court then must "concentrate its efforts . . . on the child's placement and well-being, rather than on a parent's challenge to a custody order"].) When the court finds by clear and convincing evidence the child is likely to be adopted, the statute mandates termination of parental rights unless the parent opposing termination can demonstrate one of six enumerated exceptions applies. (§ 366.26, subd. (c)(1)(B); see *In re Matthew C.* (1993) 6 Cal.4th 386, 392 [when child adoptable and declining to apply one of the statutory exceptions would not cause detriment to the child, the decision to terminate parental rights is relatively automatic].)

To satisfy the subdivision (c)(1)(B)(i) exception to termination a parent must prove he or she has "maintained regular visitation and contact with the child and the child would benefit from continuing the relationship." (§ 366.26, subd. (c)(1)(B)(i); see *In re Derek W.* (1999) 73 Cal.App.4th 823, 826 ["parent has the burden to show that the statutory exception applies"].) The "benefit" prong of the exception requires the parent to prove his or her relationship with the child "promotes the well-being of the child to such a degree as to outweigh the well-being the child would gain in a permanent home with new, adoptive parents." (*In re Autumn H.* (1994) 27 Cal.App.4th 567, 575 ["the court balances the strength and quality of the natural parent/child relationship in a tenuous placement against the security and the sense of belonging a new family would confer"].) No matter how loving and frequent the contact, and notwithstanding the existence of an "emotional bond" with the child, "the parents must show they occupy 'a parental role' in the child's life." (*In re Andrea R.* (1999) 75 Cal.App.4th 1093, 1108; see *In re Beatrice M.* (1994) 29 Cal.App.4th 1411, 1418.) The relationship that gives rise to this exception to the statutory preference for adoption "characteristically aris[es] from

7

day-to-day interaction, companionship and shared experiences. Day-to-day contact is not necessarily required, although it is typical in a parent-child relationship." (*In re Casey D.* (1999) 70 Cal.App.4th 38, 51.) Moreover, "[b]ecause a section 366.26 hearing occurs only after the court has repeatedly found the parent unable to meet the child's needs, it is only in an extraordinary case that preservation of the parent's rights will prevail over the Legislature's preference for adoptive placement." (*In re Jasmine D.* (2000) 78 Cal.App.4th 1339, 1350.)

Although a parent has a right to due process at a section 366.26 hearing, the court can require an offer of proof before setting a contested hearing on the parent-child relationship exception to termination of parental rights. (*In re Tamika T.* (2002) 97 Cal.App.4th 1114, 1122 ["court can require an offer of proof to insure that before limited judicial and attorney resources are committed to a hearing on the issue, mother had evidence of significant probative value"].) "A proper offer of proof gives the trial court an opportunity to determine if, in fact, there really is a contested issue of fact. The offer of proof must be specific, setting forth the actual evidence to be produced, not merely the facts or issues to be addressed and argued. If the trial court finds the offer of proof insufficient and declines to hold a contested hearing, the issue is preserved for appeal so that a reviewing court can determine error and assess prejudice." (*Id.* at p. 1124.)

2. *Any Error in Failing To Hold a Contested Hearing Was Harmless*

Patricia argues the juvenile court erred in refusing to set a contested 366.26 hearing merely because she failed to appear in court on the scheduled date. In support of this contention Patricia emphasizes the court did not expressly find inadequate her offer of proof concerning the parent-child relationship exception to termination of parental rights.

We agree it would be error to deny a contested hearing solely on the basis of Patricia's unexplained absence. However, a reasonable inference from the record is that Patricia's failure to attend the hearing was not the animating reason for the court's denial

8

of her counsel's request since it first asked for an offer of proof. Rather, it appears the court concluded no hearing was necessary in light of the wholly inadequate offer.

Even if the court did improperly deny Patricia's request for a hearing solely because she did not appear on September 20, 2012, moreover, any error was harmless. Although the Department reported Patricia had regularly visited Rolando three to four days a week and the two were affectionate, the parent-child relationship exception to termination requires a significantly greater showing. In her offer of proof Patricia's counsel did not mention, let alone set forth the evidence to be produced, that Patricia could establish she occupied a parental role in Rolando's life or that any benefit of a continued relationship with her would outweigh the benefits of permanent placement with the maternal grandmother with whom Rolando had lived essentially all of his young life and with whom he was closely bonded. Patricia's suggestion it was the court's responsibility to question her counsel to essentially draw out an adequate offer of proof is simply wrong. Indeed, the record reflects the inadequate offer of proof accurately mirrored the actual state of the evidence: There was no basis upon which the court could conclude this was one of those extraordinary cases in which a continued tenuous relationship between mother and child outweighed the well being Rolando would gain in a permanent home with his grandmother.

## DISPOSITION

The order is affirmed.


PERLUSS, P. J.

We concur:


ZELON, J.                    JACKSON, J.


9