[No. B152626. Second Dist., Div. Four. Apr. 23, 2002.]

In re TAMIKA T., a Person Coming Under the Juvenile Court Law.
LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND
FAMILY SERVICES, Plaintiff and Respondent, v.
THEODORA T., Defendant and Appellant.

**COUNSEL**

Andre F. F. Toscano, under appointment by the Court of Appeal, for Defendant and Appellant.

Lloyd W. Pellman, County Counsel, and Sterling Honea, Principal Deputy County Counsel, for Plaintiff and Respondent.

**OPINION**

**VOGEL (C. S.), P. J.—**

INTRODUCTION

Theodora T. (mother) appeals from the order terminating her parental rights to her daughter Tamika. At the Welfare and Institutions Code section 366.26[1] hearing, she attempted to defeat termination of her rights by arguing the "regular visitation and contact" exception. The trial court asked for and received an offer of proof from her on that issue. The court found the offer insufficient to warrant a contested hearing and, after making all appropriate findings, terminated parental rights. She now contends she has a statutory and constitutional right to a contested hearing so that the trial court committed reversible error per se in requiring her to first make an offer of proof.

We disagree. We adhere to the view we expressed in *In re Jeanette V.* (1998) 68 Cal.App.4th 811 [80 Cal.Rptr.2d 534]: A parent is entitled to due process at a hearing to terminate parental rights but due process is a flexible concept. Applying that principle to this case, we conclude a trial court does not deny due process if it requires a parent to make an offer of proof before it conducts a contested hearing on the issue of whether a parent can discharge his or her burden of establishing a statutory exception to termination of parental rights. We therefore affirm the trial court's order.

---

[1]All subsequent statutory references are to the Welfare and Institutions Code.

FACTUAL AND PROCEDURAL BACKGROUND

Tamika was born in January 1994.

On November 18, 1997, the Los Angeles County Department of Children and Family Services (Department) filed a section 300 petition alleging mother's frequent use of heroin rendered her incapable of taking care of Tamika, endangered the child's safety, and created a detrimental home environment.[2]

On November 20, 1997, the court sustained the petition based upon mother's substance abuse and neglect of her daughter.

On December 29, 1997, the court removed Tamika from mother's custody and declared her a dependent of the court. The court's disposition plan required mother to attend, inter alia, drug rehabilitation and parent education counseling. Tamika was placed with a foster parent. Mother was permitted to have monitored visits.

Department's report prepared for the June 29, 1998 judicial review hearing indicated mother was attending an in-patient drug treatment program that included drug counseling and random drug testing. Mother had weekly monitored visits with Tamika, which went smoothly. The court decided to permit mother to have all-day monitored visits on a weekly basis at the drug rehabilitation facility. The court ordered preparation of a supplemental report and continued the matter for a month.

On July 23, 1998, the court ordered Department to continue to provide reunification services. The matter was set for a section 366.22 permanency planning hearing in six months.

The next hearing was conducted on January 12, 1999. Unfortunately, mother's drug rehabilitation was short-lived; less than a week prior to the January hearing she relapsed and began using heroin again. The court found reasonable efforts had been made to reunite Tamika with mother but that to return Tamika to mother's custody would create a substantial risk of physical and emotional harm. The court limited mother to monitored visitation.

In the following months, mother unsuccessfully participated in several different drug rehabilitation programs until late April 1999 when she entered the Sober Living Home. Once mother was in this program, she had three successful monitored visits with Tamika.

---

[2]When juvenile court proceedings commenced, Tamika's father was in prison. He died shortly before mother's parental rights were terminated.

However, on May 26, 1999, mother left the Sober Living Home without leaving a forwarding address. As of August 10, 1999, mother had not seen Tamika for three months. In addition, Department had been unable to contact mother. Consequently, the court terminated reunification services, ordered Department to provide permanent placement services, and set the matter for a section 366.26 hearing.

Because mother's whereabouts were unknown, the section 366.26 hearing was repeatedly continued for more than a year in order to properly notice her.

On June 25, 2001, mother appeared in court. She stated she now lived in Denver, Colorado, and gave the court her permanent mailing address and phone number. Mother's attorney requested "a contested .26 hearing." The court set the hearing for August 27, 2001, explicitly conditioned upon an offer of proof from mother. The court permitted mother to have monitored contact with Tamika. The court told mother: "[You] should know that Tamika was very worried about you during the period that we didn't know where you were. And she was coming to court expressing concern about you and where you were. And to be her age and have to be worrying about that, I can't even imagine. But the other thing is the impact that has long range for her has got to be strong. So I don't know what Tamika's desires are today about having contact with you. But she's probably going to have to deal with some stuff before she's even interested in trying to see about forming a new relationship with you again."

Department's report prepared for the August 2001 section 366.26 hearing indicated Tamika wanted to stay with her foster mother. Tamika's therapist stated the child's feelings "for her foster family are very strong and that her adjustment continues to improve as she matures within the security and structure of their home. Her calm, thoughtful demeanor points to her confidence that she is accepted, respected, and loved member of the family." Department recommended termination of mother's parental rights and placement for adoption.

At the August 27, 2001 section 366.26 hearing, the court asked for an offer of proof in regard to mother's request for a contested hearing. Mother's attorney replied: "Mother has maintained an emotional bond with the minor. She has written the minor several times recently . . . . The child is 7 years old. . . . [She] developed a strong bond prior to the removal [in 1997] of the child from her care. And it would be in the best interests of the minor to continue to have contact with the mother. This isn't an infant who's going to forget the contact and the bond that was developed by the mother and the

minor." In response to questions from the court, mother stated she had last visited Tamika in February 2000 and had written her two letters since then.

The court ruled: "[Department] has a burden of showing the child is adoptable and anyone who wants to contest has to rebut that and the burden falls to that party [e.g., mother]. At this point there's been no showing that there is any evidence . . . to rebut that. The code is very specific regarding the exception, being that the parent has maintained regular visitation and contact with the child and the child would benefit from a continuing relationship. [In] this situation, the mother has had no contact in one and a half years and has written two letters during that period. And the mother has not stated that Tamika . . . wants to continue to have that contact, even if it were sufficient, which it's not. So the offer of proof has failed."

Turning to the question of terminating mother's parental rights, the court ruled: "Based upon the evidence, the court finds by clear and convincing evidence that return [to] the parent[] would be detrimental. Tamika is adoptable. The parental rights are terminated, she's declared free from the care, custody and control of the parent[]. Care, custody and control is transferred to [Department] for the purposes of adoptive planning and placement."

This appeal by mother follows.

DISCUSSION

■ Section 366.26 is the sole statutory provision governing termination of parental rights. Subdivision (a) of the section states in pertinent part: "The procedures specified herein are *the exclusive procedures* for conducting these hearings." (Italics added.) Subdivision (b) states: "At the hearing, . . . the court . . . shall review the report [required by statute], shall indicate that the court has read and considered it, *shall receive other evidence that the parties may present,* and then shall make findings and orders . . . ." (Italics added.) Subdivision (c)(1) states: "If the court determines, based on the assessment provided as ordered under [the relevant statute], and *any other relevant evidence,* by a clear and convincing standard, that it is likely the child will be adopted, the court shall terminate parental rights and order the child placed for adoption . . . unless the court finds a compelling reason for determining that termination would be detrimental to the child due to one or more of the following circumstances: [¶] (A) The parents or guardians have maintained regular visitation and contact with the child and the child would benefit from continuing the relationship." (Italics added.)

In this case, mother attempted to defeat termination of parental rights by arguing the regular visitation and contact exception applied. As the trial

court noted, it was mother's burden to establish the predicate facts to that exception. (*In re Jasmine D.* (2000) 78 Cal.App.4th 1339, 1350 [93 Cal.Rptr.2d 644], and cases cited therein.)

Mother contends she has a due process right to a contested hearing on the applicability of this exception. In other words, she urges the trial court has no discretion to require an offer of proof on the applicability of the exception before conducting a contested hearing. She therefore claims the trial court's denial of her request for a contested hearing was prejudicial per se, requiring reversal. We disagree.

We addressed an analogous claim in *In re Jeanette V., supra,* 68 Cal.App.4th 811. At the section 366.26 hearing, the father of the dependent child sought to preclude termination of his parental rights by urging he had maintained regular visitation and contact with his daughter. He asserted the two most recent social worker reports, which represented he had not visited his daughter in the prior 18 months, had not adequately addressed the issue of visitation. He claimed the trial court could not receive the reports into evidence unless he was given the opportunity to cross-examine the authors of the reports about whether he had visited his daughter at some earlier time. The court disagreed, received the reports into evidence without requiring their authors to testify, and terminated the father's parental rights.

On appeal, the father contended, in part, he had a due process right to cross-examine the authors of the reports. On the question of due process, we wrote: "Of course a parent has a right to 'due process' at the hearing under section 366.26 which results in the actual termination of parental rights. This requires, in particular circumstances, a 'meaningful opportunity to cross-examine and controvert the contents of the report.' [Citations.] But due process is not synonymous with full-fledged cross-examination rights. [Citation.] *Due process is a flexible concept which depends upon the circumstances and a balancing of various factors.* [Citation.] *The due process right to present evidence is limited to relevant evidence of significant probative value to the issue before the court.* [Citations.] Even where cross-examination is involved, the trial court may properly request an offer of proof if an entire line of cross-examination appears to the court to be irrelevant to the issue before the court. [Citations.]" (*In re Jeanette V., supra,* 68 Cal.App.4th at pp. 816-817, italics added.)

Addressing the father's claim that the court's ruling denying him the right to cross-examine the social workers denied him due process, we noted the only issue raised by the father in the trial court was the regular visitation and contact exception to termination of parental rights. We reasoned that because

in the trial court "[the father] could not deny [his] failure to satisfy the 'maintain regular visitation and contact' element, and could only suggest that cross-examination would reveal something about [his] visitation during an unspecified earlier period," the court did not err in finding that "in light of the statutory requirements and counsel's offer of proof, cross-examination of the social workers was not required as a matter of due process or a condition of admissibility of the reports. [Citation.]" (*In re Jeanette V., supra,* 68 Cal.App.4th at p. 817.)

 By a parity of reasoning, the trial court, given the facts of this case, did not violate due process by requiring an offer of proof from mother before setting a contested hearing on the regular visitation and contact exception to termination of parental rights. In May 1999, mother had left her drug rehabilitation program without explanation and without leaving a forwarding address. It then took the court approximately two years to contact her. During that period, Tamika had worried about mother and had expressed her concerns in that regard to the court. Mother appeared at the June 25, 2001 hearing and explained she now lived out of state. Given those facts, the trial court could reasonably be skeptical whether mother could offer probative evidence on the regular visitation and contact exception. It was in that context the court indicated it wanted an offer of proof before it conducted a contested hearing on the applicability of the exception. Significantly mother does not contend that *on the facts of this case* it was improper for the trial court to request an offer of proof; instead, she contends the trial court had no right to even make that request.

At the section 366.26 hearing conducted in August 2001, the court requested an offer of proof before it would conduct a contested hearing on the exception to termination of parental rights. Mother's attorney simply responded with the conclusory statement that mother had "maintained an emotional bond" with Tamika and that she had developed "a strong bond" before Tamika was removed from her custody in 1997. Mother told the court her last visit with Tamika was *18 months prior* and that she had written her daughter two letters since that visit. Mother does not contend her offer of proof was sufficient to trigger a contested hearing. Instead, she takes the position she has a statutory and constitutional right to a contested section 366.26 hearing "irrespective of [her] offer of proof."

Mother concedes her due process right to present evidence on the exception is limited to relevant evidence of significant probative value and that if she proffered irrelevant evidence "on the issue being contested, the court could properly exclude such evidence." However, mother believes her due process right to present evidence at a section 366.26 hearing *cannot* first be put to the test of an offer of proof. It is at this point we disagree.

Because due process is, as we noted in *In re Jeanette V., supra,* 68 Cal.App.4th 811, a flexible concept dependent on the circumstances, the court can require an offer of proof to insure that before limited judicial and attorney resources are committed to a hearing on the issue, mother had evidence of significant probative value. If due process does not permit a parent to introduce irrelevant evidence, due process does not require a court to hold a contested hearing if it is not convinced the parent will present relevant evidence on the issue he or she seeks to contest. The trial court can therefore exercise its power to request an offer of proof to clearly identify the contested issue(s) so it can determine whether a parent's representation is sufficient to warrant a hearing involving presentation of evidence and confrontation and cross-examination of witnesses. ■■■ "While a parent in a juvenile dependency proceeding has a due process right to a meaningful hearing with the opportunity to present evidence [citation], parents in dependency proceedings 'are not entitled to full confrontation and cross-examination.' [Citation.] *Due process requires a balance.* [Citation.] *The state's strong interest in prompt and efficient trials permits the nonarbitrary exclusion of evidence* [citation], *such as when the presentation of the evidence will 'necessitate undue consumption of time.'* [Citation.] The due process right to present evidence is limited to relevant evidence of significant probative value to the issue before the court. [Citations.]" *(Maricela C. v. Superior Court* (1998) 66 Cal.App.4th 1138, 1146-1147 [78 Cal.Rptr.2d 488], italics added.) **(1c)** We therefore conclude it does not violate due process for a trial court to require an offer of proof before conducting a contested hearing on one of the statutory exceptions to termination of parental rights.

Mother cites two cases from the Third Appellate District to support a contrary conclusion.

The first case, *In re James Q.* (2000) 81 Cal.App.4th 255 [96 Cal.Rptr.2d 595], addressed whether a trial court could require a parent to make an offer of proof before holding a judicial review hearing pursuant to section 366.21, subdivision (e) on the issue of termination of reunification services. The appellate court concluded "[a]s a matter of statutory construction and constitutional due process, . . . the juvenile court cannot require a party to a review hearing to tender an offer of proof as a condition to obtaining a contested hearing." *(James Q., supra,* at p. 266.) The appellate court distinguished our earlier decision in *In re Jeannette V., supra,* 68 Cal.App.4th 811, on the basis it involved a hearing conducted following the expiration of the reunification period. *(James Q., supra,* at p. 267.) On that basis, we could likewise distinguish *James Q.*'s holding from this case: it arose at a different juncture in the dependency proceeding.

But more to the point, we are not persuaded by *James Q.*'s reasoning. It relied upon the language in section 366.21, subdivision (e) that the parent is

entitled to a "hearing" on the issues embraced by the statute and from that extrapolated a due process right that precludes a trial court from requiring an offer of proof before conducting a contested hearing on those issues. That conclusion is at odds with, in general, the precedent that in a dependency proceeding due process is a flexible concept[3] and, in particular, with our conclusion in *In re Jeanette V., supra,* 68 Cal.App.4th 811, that a parent at a section 366.26 hearing does not have a per se right to cross-examine the authors of reports adverse to the parent's position even though those reports are introduced into evidence. And the conclusion ignores the reality, which the Third District had earlier acknowledged in *Ingrid E. v. Superior Court, supra,* 75 Cal.App.4th 751, that "[d]oubtless it is reasonable for the court, in pursuit of its statutory duties, to ascertain the issues relevant to the hearing and make some relevancy determinations [given] that time is not an unlimited commodity in today's busy juvenile courts." (*Id.* at p. 760.)

The second case mother relies upon is *In re Kelly D.* (2000) 82 Cal.App.4th 433 [98 Cal.Rptr.2d 188]. It dealt with a postpermanency planning review hearing conducted pursuant to section 366.3, subdivision (e). The issue presented at the hearing was whether the parent's visitation rights should be reduced as requested by the social worker. The trial court held the parent had no right to a contested hearing. The appellate court disagreed. Because the statute gives the parent the right to "participate in the hearing," the court concluded that right had "little meaning or content if it does not include the right to challenge or contest a proposed order." (*Kelly D.*, at p. 439, fn. omitted.)

*Kelly D.*'s holding is distinguishable. The issue here is not whether a parent has a right to contested hearing on one of the exceptions to termination of parental rights after the court has found the dependent child to be adoptable. Concededly, he or she does. The real issue is whether due process makes that right absolute so as to preclude a court from requiring a parent to make an offer of proof before a contested hearing is held. On that point, *In re Kelly D.* is simply not germane. In any event, its holding is based upon the specific statutory language of section 366.3, subdivision (e). That language is not relevant to this case because, as noted above, section 366.26, subdivision (a) explicitly states its procedures "are the exclusive procedures for conducting [its] hearings."

Last, we reject mother's claim that "[t]he express language of section 366.26 also establishes the parent's statutory right to a contested hearing."

---

[3]See, e.g., *In re Sade C.* (1996) 13 Cal.4th 952, 986-991 [55 Cal.Rptr.2d 771, 920 P.2d 716]; *In re Malinda S.* (1990) 51 Cal.3d 368, 383 [272 Cal.Rptr. 787, 795 P.2d 1244]; *Ingrid E. v. Superior Court* (1999) 75 Cal.App.4th 751, 757 [89 Cal.Rptr.2d 407]; and *In re Jeanette V., supra,* 68 Cal.App.4th 811, 817.

She relies upon section 366.26, subdivision (b)'s language that the court "shall receive other evidence [in addition to the social worker's report(s)] that the parties may present" and the language in section 366.26, subdivision (c) that the court should consider the social worker report(s) "and any other relevant evidence" in determining whether the child is adoptable, and if so, whether one of the statutory exceptions to termination of parental rights exists. While we agree with mother that these statutory provisions "signify that the parent has the right to make his or her case affecting his or her parental rights at the section 366.26 hearing," that right is not unfettered. As explained above, due process does not preclude the trial court from requiring an offer of proof before a parent offers evidence on a contested issue at a section 366.26 hearing.

We are not convinced by mother's argument that "[i]n the absence of a contested section 366.26 hearing to hear all of the applicable evidence as contemplated by section 366.26, subdivision (c)(1)(A), there was clear, substantial risk of an erroneous determination by the [trial] court in this case." A proper offer of proof gives the trial court an opportunity to determine if, in fact, there really is a contested issue of fact. The offer of proof must be specific, setting forth the actual evidence to be produced, not merely the facts or issues to be addressed and argued. If the trial court finds the offer of proof insufficient and declines to hold a contested hearing, the issue is preserved for appeal so that a reviewing court can determine error and assess prejudice. (See, e.g., *People v. Schmies* (1996) 44 Cal.App.4th 38, 51 [51 Cal.Rptr.2d 185].) This procedure adequately protects a parent's rights.

### DISPOSITION

The order terminating appellant's parental rights to Tamika T. is affirmed.

Epstein, J., and Hastings, J., concurred.

Appellant's petition for review by the Supreme Court was denied July 10, 2002. Brown, J., did not participate therein.