Filed 3/24/14  Roosevelt W. v. Superior Court CA2/4

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| ROOSEVELT W. et al.,<br><br>Petitioners,<br><br>v.<br><br>THE SUPERIOR COURT OF LOS ANGELES COUNTY,<br><br>Respondent;<br><br>LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>Real Party in Interest. | B252748<br>(Los Angeles County<br>Super. Ct. No. CK89770) |

ORIGINAL PROCEEDINGS in mandate.  Carlos Vasquez, Judge.  Petitions denied.

Law Offices of Katherine Anderson, Jennifer Pichotta and Roosezetta Upshaw for Petitioner Roosevelt W.

K.G., in pro. per., for Petitioner K.G.

No appearance by Respondent.

John F. Krattli, Office of the County Counsel, James M. Owens, Assistant County Counsel and William D. Thetford, Deputy County Counsel for Real Party in Interest.

Children's Law Center of Los Angeles and Patty Choi for Minor.

_____

Petitioners Roosevelt W. (Father) and K.G. (Mother), the parents of a son K.W. (K.), challenge the court order made at the 18-month review hearing terminating family reunification services for Father and setting a Welfare and Institutions Code section 366.26 hearing.[1]  Father contends the juvenile court erred in requiring him to make an offer of proof prior to allowing him to testify or cross-examine the caseworker at the hearing.  Mother's petition, filed in propria persona after her appointed attorney found no meritorious issues, asserts the court erred in failing to provide her an opportunity to present facts at the 18-month review hearing.[2]  Real party in interest Department of Children and Family Services (DCFS), joined by the attorney for K., opposes the petitions.  We conclude that any error was not prejudicial.  Accordingly, the petitions are denied.

## FACTUAL AND PROCEDURAL BACKGROUND

The family came to the attention of DCFS in September 2011, when K. was almost four.  He and Mother were living with her parents in Southern California. Mother had a mental breakdown, claiming she was God, that God was talking to

---

[1]     Undesignated statutory references are to the Welfare and Institutions Code.

[2]     As will be seen, Mother's reunification services were terminated at the 12-month review hearing.  Mother's section 388 petition to modify that order, scheduled to be heard at the 18-month review hearing, was withdrawn, and Mother offered no evidence at the 18-month review hearing.

her, and that the police officers and medical personnel who came to evaluate her were devils. Mother was placed on a psychiatric hold. K. was left in the care of the maternal grandparents. Mother was diagnosed with a schizophrenia-like mental disorder.

When Mother was released from the psychiatric hold, she fled with K. to Alabama, where Father lived. Father contacted DCFS and arranged for the boy to be returned to the maternal grandparents in California. He agreed K. was not safe with Mother as she was behaving bizarrely.[3] He reported that K. had been born in California and had lived with Mother in the home of his maternal grandparents since his birth. Father was not providing any financial support. In September 2011, the court formally detained K. and placed him with the grandparents.

At the November 2011 jurisdictional/dispositional hearing, the court found true that Mother had displayed mental and emotional problems which rendered her incapable of providing regular care for K., endangered his physical and emotional health and safety, and placed him at risk of physical and emotional harm under section 300, subdivision (b) (failure to protect). Her reunification plan required her to undergo a psychiatric evaluation, participate in counseling, and take all prescribed psychotropic medication. Prior to the jurisdictional hearing, there were no visits by either parent.

Father was initially deemed non-offending and was not ordered to participate in any services. However, subsequent to the jurisdictional hearing, Mother, who was pregnant and had returned to Southern California, filed a section 388 petition in which she stated that when she was in Alabama, Father had held a

---

[3] Among other things, Mother went out the house naked, threw away many of Father's belongings saying she had been told to do so by the Lord, threw knives at Father, and spanked K. for inappropriate reasons.

knife to her throat, choked her until she blacked out, tied her to a chair, forced her to take medication, raped her, and regularly beat her. Prior to the hearing on the section 388 petition, the caseworker interviewed Mother, who repeated the accusations set forth in her petition, and further stated that Father had whipped her with a rope after she became pregnant, held his hand over her nose and mouth until she blacked out, punched her in the eye, and hit her with a cooking pot.[4] She provided pictures taken in December 2011 showing bruises, welts and other marks on her thigh, arms, neck, face, ears, stomach and cheek. She also provided a text message from Father apologizing for the "medicine[,] . . . straight jacket[,] [and] chair." Interviewed by the caseworker, Father admitted that he had tied Mother to a chair because she was "acting crazy." He also admitted slapping Mother twice, hitting her legs with a jump rope, and forcing her to take medication.

In April 2012, DCFS filed a section 342 subsequent petition, alleging that K. was in danger of serious physical harm due to the domestic violence between Father and Mother and physical abuse on the part of both parents. During the period between the original jurisdictional finding and the filing of the subsequent petition, Father had not visited K. He had contacted the boy telephonically, but K. showed little interest in speaking to Father and sometimes refused to talk to him at all. After filing the petition, DCFS obtained evidence that Father had been arrested and charged with third degree assault in Alabama.

The court held a second detention hearing and formally detained K. from Father. At a second jurisdictional/dispositional hearing held in July 2012, the court sustained allegations that Mother and Father had a history of engaging in violent altercations, specifically finding true that Father struck Mother with a rope, tied her

---

[4] Mother also reported throwing boiling water on Father, threatening Father with knives, and hitting K. with a belt.

4

to a chair, and slapped her, and that Mother threw boiling water at Father. The court also found that Mother inappropriately physically disciplined K. by striking him with a belt.[5] The court found that the sustained allegations endangered the child's physical health and safety, placed him at risk of harm, and supported jurisdiction under section 300, subdivision (b). The court directed Father to take a parenting class and to participate in individual counseling to address domestic violence and other case issues with a DCFS-approved counselor.

The January 2013 report stated that Father had participated in a parenting class and an anger management and counseling program in Alabama, and had received certificates of completion for both.[6] The report stated that Father was "in complian[ce] with the court orders by completing [i]ndividual counseling and participating in parent education classes." The caseworker recommended an ICPC (Interstate Compact on the Placement of Children) evaluation of Father's home in Alabama. The report stated that there was not a substantial probability of K. returning to Father's home at the next hearing because he resided out of state, he had not been able to visit regularly, and his home had not been assessed by child protective services in Alabama. The caseworker said she wanted "to observe how . . . [K.] interacts with [Father] and allow them to re-establish their relationship."

At the January 7, 2013 12-month review hearing, Father testified that he had attended sessions with the therapist in Alabama twice weekly for a brief period. He further testified he did not recall all the incidents of domestic violence found true by the court. During the counseling, he did not indicate to the therapist that he had struck Mother with a rope because "it did not happen." He discussed tying her

---

[5] K. initially reported being hit with a belt by both parents. Prior to the jurisdiction hearing, he stated that only Mother had hit him and that Father had hit Mother. The court dismissed the allegation that Father physically abused or inappropriately disciplined K.

[6] The certificates indicated Father completed the programs in October 2012.

5

up, but indicated he did not believe that to be domestic violence. The court found that Father had consistently and regularly contacted and visited the child, and had made "partial" progress in resolving the problems that led to K.'s removal from the home. The court terminated Mother's reunification services, finding she had not made substantial progress.[7]

The March 2013 report was not filed in time for the 18-month review hearing, scheduled for that month. The court continued the hearing to May and instructed DCFS to initiate an ICPC assessment of Father's home in Alabama. The next report, filed May 1, 2013, again stated that Father had "completed the court ordered individual counseling and parenting education classes." The caseworker had received a letter from Father's Alabama therapist, who stated that Father had been under her care from September 4 to October 2, 2012 and that they had addressed the issues relating to the case. The therapist recommended that K. be

---

[7]    Mother's compliance vacillated wildly during the period reunification services were provided. Prior to her return to Southern California, she had no contact with K. and presented no evidence of having made any progress in her reunification plan. After her return, Mother submitted to an intake assessment at a mental health clinic and began attending an anger management group, parenting classes, and group counseling for people suffering from schizophrenia. She was evaluated by a psychiatrist in April 2012, who diagnosed a psychotic disorder, but prescribed no medication because Mother was pregnant and was unwilling to take medication. Subsequently, Mother claimed she had no need to participate in counseling or change any of her behavior and cut off all contact with the caseworker. Her monitored visits with K. were equally varied. During certain periods, the visits were pleasant and appropriate. Other times, Mother would argue with the monitor and the grandparents instead of interacting with K., would talk to the boy about the case, or would threaten to "whoop" him.

After the court terminated reunification services, Mother became more cooperative and began participating in a counseling program. She filed a section 388 petition for modification seeking additional reunification services based on her compliance. However, prior to the hearing on the motion, Mother was terminated from the program for being aggressive and hostile toward staff members. She thereafter withdrew her petition.

returned to his care.  The report indicated Father telephoned K. two to three times per week and had positive and appropriate monitored visitation with him.  The sole concerns expressed by the caseworker were that Father did not communicate well with the caregiver grandparents, and that his home had not been assessed by Alabama child protective services.  The report recommended that an ICPC be ordered to assess Father's home for possible release.  At the May hearing, however, counsel stated that DCFS's recommendation was to terminate reunification services for Father and to set a section 366.26 hearing.  The court found the caseworker's report to be "inadequate, incomplete and unclear."  It continued the 18-month review hearing and ordered a supplemental report.

The May 2013 report stated that the caseworker had spoken with Father's therapist, who told the caseworker that Father participated in one month of counseling, but that she could not remember what was addressed.  The caseworker reported that K. had begun therapy to "help[] him process his feelings regarding the conflict he witnessed between his parents . . . ."  The report stated that Father had received inadequate counseling and that DCFS's recommendation was to set a section 366.26 hearing.  The court set the matter for contest, and specifically requested that the next report include information on the status of the assessment of Father's home and an update regarding the progress of the parents.

The July 2013 report continued to express DCFS's concern that Father had received only a brief period of counseling.  K. stated to the caseworker that he did not want to live with Father because he remembered when Father hit Mother in the face.  The August 2013 report stated that Father was visiting K. regularly.  The visits were reportedly positive and appropriate.  Alabama child protective services had attempted to assess Father's home, but concluded a home study could not be

7

completed because Father appeared to be living in California.[8] DCFS continued to recommend termination of Father's reunification services because he had not participated in counseling or therapy beyond the four weeks completed in 2012.

The 18-month review hearing did not take place until November 4, 2013.[9] At the hearing, Father's counsel stated Father's position that he had completed all the counseling required by the court-ordered reunification plan. The court stated to Father: "[T]he Department's position [is] . . . that the counseling was insufficient. . . . So . . . you will have an opportunity to present your case, but at least you know going in that they are going to argue that this was not a sufficient program, that it was less than a month. [¶] So you can confer with your attorney as to whether you want to take that chance or not and go forward on the basis of the counseling that you have done." Father did not change his position. Father's counsel stated that Father wished to testify regarding his progress, the depth of the counseling and how often he attended. The court asked for an offer of proof. Counsel stated that the evidence would establish that Father attended counseling "[a]t least" twice a week for four weeks.[10] Counsel also read into the record the letter written to the caseworker by the Alabama therapist expressing the opinion that K. could safely be returned to Father's custody. Counsel urged the court to defer to the professional therapist. Counsel for DCFS contended that DCFS had informed Father that less

---

[8]     The caseworker's reports indicated that beginning in January 2013, Father was regularly visiting K. in California and also regularly meeting face-to-face with the caseworker here. Father subsequently explained that he had remained in the area to care for his ailing father, but maintained an address in Alabama.

[9]     The review hearing was continued from August to November because the caseworker was on medical leave and because the parties were engaged in discussions to resolve the case.

[10]     At the 12-month review hearing, Father had testified he attended counseling sessions twice weekly.

than one month of counseling was insufficient to address the serious domestic violence incidents found true by the court, and that Father had refused to undergo further counseling. K.'s counsel joined in the request that Father's reunification services be terminated.

The court began to make its finding, stating that Father had not made substantial progress "given the seriousness of the domestic violence allegations . . . ." Father's counsel interrupted and asked if the court would permit Father to cross-examine the caseworker. The court denied the request. It found by clear and convincing evidence that Father had made only partial progress toward alleviating or mitigating the causes necessitating the assertion of jurisdiction and specifically found that one month in therapy could not address the violent conduct asserted in the petition. The court terminated reunification services for Father and set a section 366.26 hearing. Petitioners noticed their intent to file writ petitions.[11]

## DISCUSSION

At the 18-month review hearing, which must be held within 18 months after the child was originally removed from the physical custody of his or her parents, "the court shall order the return of the child to the physical custody of his or her parent . . . unless the court finds, by a preponderance of the evidence, that the

---

[11] In Mother's writ petition, filed in propria persona, she contends the court improperly denied her a contested section 366.22 hearing. Mother's reunification services were terminated at the 12-month review hearing, on January 7, 2013. At the November 4, 2013 18-month review hearing, Mother's counsel withdrew the section 388 petition seeking modification of that order and argued that Mother should be permitted unmonitored visitation, but sought to present no evidence. The court agreed unmonitored visitation could begin as soon as K.'s therapist approved. In her writ petition, Mother raises no issues pertaining to the November 2013 visitation order or her petition for modification. To the extent Mother seeks review of the January 2013 order terminating her reunification services, the time for challenge of such order is long since past.

9

return of the child to his or her parent . . . would create a substantial risk of detriment to the . . . child." (§ 366.22, subd. (a).) "The failure of the parent . . . to participate regularly and make substantive progress in court-ordered treatment programs shall be prima facie evidence that return would be detrimental." (*Ibid.*) Unless reasonable services were not provided or certain exceptional conditions are present (see § 366.22, subd. (b)), if the child is not returned to a parent at the 18-month review hearing, "the court shall order that a hearing be held pursuant to Section 366.26 in order to determine whether adoption . . . , guardianship or long-term foster care is the most appropriate plan for the child." (§ 366.22, subd, (a); see *In re Taylor J*. (2014) __ Cal.App.4th __ [2014 Cal.App.LEXIS 163].)

At review hearings, the agency bears the burden of proving that reasonable services were provided to the parent and that the return of the child to the parent would create a substantial risk of detriment to the child. (*David B. v. Superior Court* (2006) 140 Cal.App.4th 772, 779 (*David B.*); *In re Yvonne W.* (2008) 165 Cal.App.4th 1394, 1400; *Blanca P. v. Superior Court* (1996) 45 Cal.App.4th 1738, 1748.) In making its findings and determinations, the court shall consider the "efforts or progress, or both, demonstrated by the parent," as well as "the extent to which he or she availed himself or herself of services provided . . . ." (§ 366.22, subd. (a); *Blanca P. v. Superior Court*, *supra*, at p. 1748.) On appeal, this court reviews the juvenile court's findings that the child would be at substantial risk of detriment if returned to the parent and that reasonable services were provided for substantial evidence. (*In re Yvonne W.*, *supra*, at p. 1400; *In re Christina A*. (1989) 213 Cal.App.3d 1073, 1080.) If the juvenile court requests an offer of proof of a parent, "the offer of proof [provided] must be specific, setting forth the actual evidence to be produced, not merely the facts or issue to be addressed and argued." (*In re Tamika T*. (2002) 97 Cal.App.4th 1114, 1124.) "If the [juvenile] court finds the offer of proof insufficient and declines to hold a contested hearing, the issue is

10

preserved for appeal so that a reviewing court can determine error and assess prejudice." (*Ibid*.)

It is undeniably true that review hearings represent "a critical aspect of the dependency system" at which "crucial determinations regarding reunification efforts and the return of the minor are made." (*In re James Q*. (2000) 81 Cal.App.4th 255, 262-263.) The review hearing at which the decision is made to terminate a parent's reunification services "marks a critical turning point in the proceedings from a focus on family reunification to finding a permanent and stable placement for the child." (*David B*., *supra*, 140 Cal.App.4th at p. 778.) Accordingly, some courts have held the juvenile court may not demand an offer of proof as a condition to conducting a contested review hearing. (*In re James Q*., *supra*, at p. 267; *David B*., *supra*, at p. 780; *In re Johnny M*. (1991) 229 Cal.App.3d 181, 190; accord, *In re A.D*. (2011) 196 Cal.App.4th 1319, 1327.)

In *In re Tamika T*., *supra*, 97 Cal.App.4th 1114, this court disagreed with the reasoning on which *In re James Q*. and courts expressing similar views relied. We explained that a rule precluding a juvenile court from requiring an offer of proof at a contested review hearing was "at odds with, in general, the precedent that in a dependency proceeding due process is a flexible concept . . . ." (*Id*. at p. 1123.) We observed that "'it is reasonable for the court, in pursuit of its statutory duties, to ascertain the issues relevant to the hearing and make some relevancy determinations [given] that time is not an unlimited commodity in today's busy juvenile courts.'" (*Ibid*., quoting *Ingrid E. v. Superior Court* (1999) 75 Cal.App.4th 751, 760.) We further stated: "A proper offer of proof gives the trial court an opportunity to determine if, in fact, there really is a contested issue of fact." (*In re Tamika T*., *supra*, at p. 1124.) We continue to adhere to the view that

11

the juvenile court could reasonably request an offer of proof of a parent at a review hearing under the appropriate circumstances.[12]

Here, Father participated in only four weeks of counseling in Alabama in the fall of 2012. He testified concerning the substance of those sessions at the 12-month review hearing in January 2013. His testimony indicated he had not fully addressed the domestic violence, as he denied recalling or having committed some of the acts admitted to the caseworker and found true by the court. Highlighting his lack of insight, he indicated he did not consider tying Mother to a chair to be domestic violence. Having heard that testimony, the court previously concluded Father had made only partial progress in overcoming the conditions that led to the assertion of jurisdiction over K. Although the caseworker was remiss in failing to timely investigate the details of the program or interview the counselor, by May 2013, DCFS had made clear its position that the counseling in which Father had participated was insufficient. By the time the 18-month review hearing was held in November 2013, Father was well aware that neither DCFS nor the court considered the four weeks of counseling he received nearly enough to address the proclivity for domestic violence demonstrated by the allegations of the petition. Asked by the court to clarify Father's position prior to introducing evidence at the 18-month

---

[12] Even those courts that have held a juvenile court generally may not require an offer of proof of a parent at a review hearing, have recognized that not every item of evidence a parent wishes to present must be heard. In *In re James Q.*, the court stated: "[T]he Evidence Code, among other statutory provisions, provides ample means for the courts to control contested proceedings in the dependency courts. [Citations.]" (*In re James Q., supra,* 81 Cal.App.4th at p. 266.) In *David B.*, the court recognized that in determining whether to admit evidence, the court may consider "relevancy" and "undue time consumption," and further observed: "[T]he dependency statutes themselves are self-limiting. At any given point in the process, the applicable statute lists exactly what is at issue by specifying the required findings. The juvenile court is not faced with a vast sea of possible issues at every review hearing." (*David B., supra*, 140 Cal.App.4th at p. 779.)

review hearing, his attorney insisted that the counseling Father had received was sufficient, and that there was no need for him to participate in any additional counseling. In response to the court's request for an offer of proof, Father's counsel stated that Father would testify concerning the number of sessions he attended per week and the "depth of [the] program[]."[13] But the number of sessions was not in dispute, and the court had already heard Father's testimony concerning what he had addressed at the sessions. Any additional testimony would have been, at best, cumulative.[14]

Moreover, even if the court erred by excluding potentially relevant testimony, the error may be deemed harmless where it can be said, based on the record, that no different result would have obtained had the request for a contested hearing been granted. (*Andrea L. v. Superior Court* (1998) 64 Cal.App.4th 1377, 1386-1387.) Here, there was no dispute that after Father was instructed by the court in July 2012 to undergo DCFS-approved counseling to address domestic violence, he participated in only four weeks of out-of-state counseling. The domestic violence found to have been perpetrated by Father was serious: he had

---

[13]    Father's counsel later stated he wished to cross-examine the caseworker. However, neither at the hearing nor in his brief on appeal did he specify any relevant area for cross-examination. "A judgment shall not be reversed by reason of erroneous exclusion of evidence unless . . . it appears of record that 'the substance, purpose, and relevance of the excluded evidence was made known to the court by the questions asked, an offer of proof, or by [some] other means . . . .'" (*In re Mark C*. (1992) 7 Cal.App.4th 433, 443, quoting Evid. Code, § 354, subd. (a).) Moreover, as discussed, the only issue considered at the hearing was whether Father had addressed through counseling the domestic violence that led to the assertion of jurisdiction. Nothing in the record indicates the caseworker's testimony would have assisted the court in resolving this issue.

[14]    We note that in the typical case, perpetrators of domestic violence are expected to complete a 26 or 52-week program, depending on the seriousness of the findings and other factors. (See, e.g., *In re C. Q.* (2013) 219 Cal.App.4th 355, 362; *In re E.T.* (2013) 217 Cal.App.4th 426, 432; *In re E.A.* (2012) 209 Cal.App.4th 787, 790; *In re Alexis E*. (2009) 171 Cal.App.4th 438, 443; *In re N.M*. (2008) 161 Cal.App.4th 253, 258.)

tied Mother to a chair, forced her to swallow medication, and beat her with a rope when she was pregnant. Mother had been photographed with bruises all over her body. At least some of the violence had been perpetrated in front of K., who had reported not wanting to live with Father because he beat Mother. Remand for a contested hearing on whether under any set of facts, a court could find the level of counseling received by Father sufficient to alleviate the issues that led to the court's jurisdictional finding would be an idle act. Any error in the juvenile court's request for an offer of proof must be deemed harmless beyond a reasonable doubt.

## DISPOSITION

The petitions are denied. The stay of the permanency review hearing under section 366.26 is lifted.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


MANELLA, J.


We concur:


EPSTEIN, P. J.


WILLHITE, J.

14